BERNARD KRASNER *vs.* MORTON S. BERK.

Norfolk.    November 6, 1974. — December 5, 1974.

Present: TAURO, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Unsound Mind.*

Evidence warranted a finding that a fifty-three year old doctor was mentally incompetent by reason of presenile dementia to enter into a contract with another doctor respecting their sharing in payment of the rent and taxes due under a lease of a suite of medical offices occupied by them. [465-469]

CONTRACT. Writ in the Municipal Court of Brookline, dated November 24, 1970.

The action was heard by *Troy, J.*

*Joseph J. Hurley* for the defendant.

*Frank G. Lichtenstein, Mark Lichtenstein & William L. Berger*, for the plaintiff, submitted a brief.

BRAUCHER, J.    The sole question presented to us in this action of contract is whether the evidence was sufficient to warrant a finding that at the time the contract was entered into by the defendant he was of unsound mind and mentally incapable of making the agreement. The trial judge denied the plaintiff's requested ruling that the evidence was insufficient, and found for the defendant, but the Appellate Division ordered the finding vacated and judgment entered for the plaintiff. We hold that the evidence warranted a finding that the defendant did not understand in a reasonable manner the nature and consequences of the transaction. See Restatement 2d: Con-

tracts (Tent. drafts 1-7, 1973) § 18C (1) (a). We therefore
reverse the order of the Appellate Division and order the
report dismissed.

We summarize the reported evidence most favorable to
the defendant. The plaintiff and the defendant, both
doctors, occupied a suite of medical offices from 1964 to
1969, and shared the rent equally. In April, 1969, they
renewed the lease for three years beginning June 1, 1969,
and on May 22, 1969, they agreed in writing that each
would pay half the rent and taxes due under the lease, even
if one of them moved out or was "unable to occupy his suite
as a result of disability or for any other reason." The written
agreement was drawn up by the plaintiff's attorney. The
defendant, aged fifty-three, was diagnosed in November,
1969, as suffering from presenile dementia, and in July,
1970, he closed his office and moved out. It was stipulated
that his share of the rent and taxes for the period from
August 1, 1970, to the expiration of the lease, May 31, 1972,
was $7,754.18, and that the only issues to be tried were
whether the defendant was of unsound mind and mentally
incapable of entering into the lease and the agreement and
whether damages could be recovered beyond the date of the
writ.

The defendant's wife and brother testified to his behav-
ior. In September, 1967, he began to be absent-minded and
confused, he missed appointments with patients and
records piled up in his office. He was unable to answer
direct questions with direct answers, and was forgetful and
oversolicitous of everyone. While skiing in New Hampshire,
he would get lost and be unable to find the lifts. On a trip in
August, 1968, he kept getting lost and sometimes could not
find his hotel room or his tickets. He failed to keep an
appointment with his brother in 1968. In the fall of 1968 he
began to consult doctors about his health. As of 1968 his
brother could no longer permit him to write prescriptions
for patient-employees at the brother's company in Maine,
although he continued to examine them. In the winter or
spring of 1969 he went to the movies and climbed over the
seats while his brother walked down the aisle. Early in 1969

he could not use his dictaphone; he ran over his medical bag in the parking lot several times; if his watch stopped, he would not know how to fix it. He would forget there were patients waiting for him. Sometimes he would leave his car at his ski lodge in New Hampshire and hitchhike home to Newton; at least once every two weeks he would forget his car at the office and hitchhike home. The defendant's wife talked to the plaintiff about these matters and the plaintiff said that he knew her husband and he seemed to be the same as he always was.

A neurologist called as a witness by the defendant testifed that the defendant was referred to him on June 5, 1969, and was found to be a friendly, coöperative man with a disorder of immediate recall; beyond this the neurological examination was entirely unrevealing. The witness reported, "It seems to me this patient may have a seizured liability which seems to be getting worse in recent years and as of now." At this time there was discussion about the defendant's giving up his practice. In November, 1969, the witness saw the defendant again. This time the hospital record showed a diagnosis of disturbance of brain function manifested by memory impairment and episodic confusion. The patient's history included the fact that his mother had a presenile dementia (loss of high intellectual function, memory, judgment) beginning at the age of fifty, accounting for the patient's terrible fear of the problem. The patient refused a definitive study because of the fear that it might demonstrate a pathology of which he was fearful. A neuropsychological test showed a verbal IQ of 116 (above average) and a performance IQ of 76 (very dangerously low, at the moronic level), indicating that the defendant was unable to reason, unable to form proper judgment, and unable to learn new material. The test results suggested that the recent memory loss was in reality a reflection of a more generalized deficiency in higher mental abilities. Very probably the defendant could be expected to function at an adequate level in situations with which he was thoroughly familiar and where success depended simply on the use or reinstatement of earlier

learned material. In situations which might demand new learning or independent judgment or any genuine degree of adaptation, he would probably do very poorly.

Based on the findings, the diagnosis was of presenile dementia. The patient had a disease in which there was premature senility of the brain; at the age of fifty-three, he had a loss of higher mental abilities resembling that of very old age dementia. The condition had been developing slowly for a matter of years and was permanent. The witness advised the defendant to give up his practice.

The plaintiff requested the judge to rule that as matter of law the evidence was insufficient to warrant a finding that at the time the lease and agreement were entered into by the defendant he was of unsound mind and mentally incapable of making these agreements. The judge denied the request with the following comment: "The evidence of Dr. John F. Sullivan, a qualified neurologist (exceptional qualifications) that the defendant was unable to reason, unable to form proper judgment or learn new material, combined with same testimony from lay witnesses established sufficient evidence." The Appellate Division held that it was prejudicial error to deny the plaintiff's request and ordered judgment for the plaintiff for $7,754.18.

We have said that in an inquiry into capacity to contract, "the true test is, was the party whose contract it is sought to avoid in such a state of insanity at the time as to render him incapable of transacting the business." *Reed* v. *Mattapan Deposit & Trust Co.* 198 Mass. 306, 314 (1908). If he "could not understand the nature and quality of the transaction or grasp its significance, then it was not the act of a person of sound mind. There may be intellectual weakness not amounting to lack of power to comprehend. But an inability to realize the true purport of the matter in hand is equivalent to mental incapacity." *Sutcliffe* v. *Heatley,* 232 Mass. 231, 232-233 (1919). We have required proof that the person in question "was too weak in mind to execute the deed with understanding of its meaning, effect and consequences." *Adams* v. *Whitmore,* 245 Mass. 65, 68 (1923). These expressions do not differ in substance from the

statement of the rule in Restatement 2d: Contracts (Tent. drafts 1-7, 1973) § 18C (1) (a): "A person incurs only voidable contractual duties by entering into a transaction if by reason of mental illness or defect . . . he is unable to understand in a reasonable manner the nature and consequences of the transaction."

Even where there is sufficient understanding, a contract may in some circumstances be voidable by reason of failure of will or judgment, where the person contracting, by reason of mental illness or defect, is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition. *Ortelere* v. *Teachers' Retirement Bd. of the City of N. Y.* 25 N. Y. 2d 196, 204-205 (1969). See Restatement 2d: Contracts (Tent. drafts 1-7, 1973) § 18C (1) (b). There was evidence in the present case to support a finding that the defendant had a terrible fear of presenile dementia and could not bring himself to face that prospect. There was evidence also that the defendant's wife discussed the defendant's condition with the plaintiff, and that the plaintiff's attorney drew up a written agreement referring explicitly to inability to occupy the suite "as a result of disability." Perhaps it might be inferred that the plaintiff, contrary to his testimony, had reason to know of the defendant's condition. But the case has not been argued in these terms, and there is no indication that the trial judge or the Appellate Division drew any such inference. We therefore do not put our decision on this ground.

On the sufficiency of understanding, the case is a close one. We have little doubt that on a record like this one a finding that the defendant had testamentary capacity, as distinguished from capacity to contract, would be upheld. Compare *Dunham* v. *Holmes,* 225 Mass. 68, 71 (1916), *Tarricone* v. *Cummings,* 340 Mass. 758, 761 (1960), with *Duchesneau* v. *Jaskoviak,* 360 Mass. 730, 732-733 (1972). See *Surrender of Minor Children,* 344 Mass. 230, 235 (1962). If the judge had found that the defendant was competent to contract, we would have had no difficulty in upholding the finding. *Meserve* v. *Jordan Marsh Co.* 340

Mass. 660, 668 (1960). *M. DeMatteo Constr. Co.* v. *Daggett,* 341 Mass. 252, 260-261 (1960). There was evidence that the plaintiff and the defendant discussed the possibility of moving to other offices before deciding to renew the lease but could not find suitable office space, that the defendant read the agreement before he signed it and then said that it was fair, and that four months later he was able to dictate a letter of complaint to the landlord showing some understanding of the terms of the lease.

We think, however, that we would invade the province of the trial judge if we drew inferences as to capacity to understand from actions of the defendant which in the setting may have been equivocal. "Where a person has some understanding of a particular transaction which is affected by mental illness or defect, the controlling consideration is whether the transaction in its result is one which a reasonably competent person might have made." Restatement 2d: Contracts (Tent. drafts 1-7, 1973) § 18C, comment b. See Green, Proof of Mental Incompetency and the Unexpressed Major Premise, 53 Yale L. J. 271, 307 (1944). When the defendant made the lease and the agreement, his medical practice had already been curtailed, and the judge could infer that this was the result of his mental condition. Within two weeks after signing the agreement he consulted a doctor specializing in brain disease, and discussed giving up his practice, and within six months that doctor advised him to give up the practice of medicine. The agreement made was an improvident one for a doctor who was about to consider whether he should give up his practice. We think the judge could find that he was not competent to make it.

The order of the Appellate Division must be reversed and the report dismissed.

*So ordered.*