In re Mary HALL, Debtor.

Bernard BROWN, Guardian
of Mary Hall, Plaintiff,

v.

FINANCIAL ENTERPRISES
CORP., Defendant.

Bankruptcy No. 95–14062–JNF.
Adv. No. 95–1436–JNF.

United States Bankruptcy Court,
D. Massachusetts.

Nov. 3, 1995.

Galen Gilbert, Boston, MA, for Debtor/Plaintiff.

Robert E. Richards, Jr., Davis, Malm & D'Agostine, Boston, MA, for Defendant.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

The matter before the Court in this adversary proceeding is the defendant's motion to dismiss the plaintiff's Complaint pursuant to Fed.R.Bankr.P. 7012 and Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The plaintiff filed an opposition to the motion, and the Court held a hearing on September 7, 1995. At the conclusion of the hearing, the Court ordered the parties to file supplemental briefs by September 22, 1995, at which time the motion to dismiss would be treated as a motion for summary judgment and taken under advisement. Having considered the affidavits and exhibits submitted by the parties, the Court now makes the following findings of fact and conclusions of law.

### II. FINDINGS OF FACT

On September 9, 1988, Mary Hall (the "Debtor") and her daughter, Marcia Hall ("Ms. Hall"), executed a promissory note in the principal amount of $24,000 payable to Financial Enterprises Corp. ("Financial" or the "defendant"). The note provided for a variable rate of interest, but not less than twenty-one percent (21%) annually, and was secured by a second mortgage on the Debtor's residence at 33 Fessenden Street, Mattapan, Massachusetts.[1] The second mortgage was recorded with the Suffolk County Registry of Deeds on the same date. According to the affidavit of Stephen Hayes ("Mr. Hayes"), Vice President of Financial, this is the only loan that Financial has ever made to the Debtor.[2]

Ms. Hall accompanied her mother to the loan closing at Financial's office at the request of her brother, Kevin Hall, who "had arranged to borrow money from Financial to fix the porches." Marcia Hall affidavit at ¶ 5. According to Ms. Hall, her mother neither read nor understood the contents of the loan documents that she signed. Ms. Hall co-signed the note after being asked by an agent of Financial to "sign below [her] moth-

---

1. Citizens Mortgage Corp. held a first mortgage on the property. The outstanding balance owed to Citizens at the time that the Debtor's petition was filed was $4,070.20.

2. In the Debtor's "Answer to Motion of Financial Enterprises Corp. for Relief from Automatic Stay" filed on June 11, 1995, she argued that the debt was paid in full by virtue of a second note payable to Financial and a mortgage which she signed on August 14, 1989. She contended that Financial failed to record a discharge of the September 9, 1988 mortgage and failed to record the August 14, 1989 mortgage, and, therefore, that Financial had no perfected security interest in her property. However, Financial disputed the existence of a second note and mortgage. The Debtor introduced no evidence of a second note and mortgage and her subsequent pleadings and affidavits do not mention the alleged transaction.

er's signature" so as to "make the loan go through faster." Marcia Hall affidavit at ¶ 7.

In 1990, the Debtor fell into arrears with respect to her obligation to Financial, and Financial commenced foreclosure proceedings. However, in consideration of payments made by the Debtor, Financial agreed to forbear from foreclosing on the property.[3]

Both Ms. Hall and her brother, Bernard Brown ("Mr. Brown"), stated in affidavits that their mother has been hospitalized for mental illness and depression for much of her adult life. They also stated that she is not competent to handle her own affairs. According to Ms. Hall, the Debtor has been dependent upon her children "for paper work, check writing, transportation, and dealing with the house. She has very little ability to understand these things, and this has been the situation for many years." Marcia Hall affidavit at ¶ 3. According to Mr. Brown, the Debtor has not been competent to handle her own affairs for the last ten years.

As a result of the Debtor's alleged mental illness and incompetence, on October 5, 1994, Mr. Brown, who lives with his mother, filed a petition dated August 22, 1994 with the Probate and Family Court Department, Suffolk County ("Probate Court"), seeking appointment of himself as the Debtor's guardian and authorization to file a bankruptcy petition on her behalf. Mr. Brown was appointed temporary guardian on October 17, 1994. On February 27, 1995, the Probate Court appointed him guardian, "with authority to file Bankruptcy (sic)." His appointment was certified on May 31, 1995 after he posted the required bond.

Meanwhile, in August of 1994, because the Debtor had ceased making loan payments, Financial referred the matter to its attorney to begin foreclosure proceedings. Mr. Hayes, in his affidavit, stated, and the Debtor's counsel conceded in his memorandum opposing the motion, that Financial had no knowledge of the Debtor's alleged incompetence until foreclosure proceedings began and Financial was informed of the guardianship petition by its counsel. Mr. Hayes further stated the following:

> At no time during the course of the foreclosure proceedings was Financial or its counsel ever advised that there was any defense to the mortgage transaction being raised by the Debtor based upon incompetence, Truth in Lending, or any other claim that could suspend or otherwise terminate the foreclosure proceedings or Financial's rights under the terms of the loan documents.

> As a result, Financial and its counsel scheduled a foreclosure sale for May 17, 1995.

Hayes affidavit at ¶¶ 11 & 12.

After publishing a notice of the intended foreclosure sale in *The Boston Globe*[4] for three successive weeks and notifying the Debtor by certified mail,[5] Financial sold the property to itself for $50,000.00 at an auction on May 17, 1995, and executed the Memorandum of Sale as the buyer on the same day. Financial incurred legal fees and costs in the amount of approximately $6,500.00 as a result of the sale. On May 24, 1995, Financial served a Notice to Quit upon the Debtor and her family.

On June 13, 1995, Mr. Brown, acting in his capacity as the Debtor's guardian, filed a Chapter 7 bankruptcy petition. On June 19, 1995, the Debtor's counsel sent a notice of rescission to Financial indicating that his client sought to rescind the loan transaction because of alleged truth in lending violations

---

3. The Court has no evidence as to the total amount of payments made by the Debtor to Financial between September of 1988 and the commencement of foreclosure proceedings. The Debtor in her pleadings suggests that payments exceeded the principal amount of the loan.

4. A copy of the newspaper advertisement was attached to Mr. Hayes' affidavit as an exhibit. The advertisement was published on April 25, May 2 and May 9, 1995.

5. The Defendant did not provide the Court with a copy of its notice to the Debtor or the certified receipt. However, Mr. Hayes, in his affidavit submitted in support of the Defendant's motion for relief from stay, states that he mailed a notice of the foreclosure sale to the Debtor by certified mail. The Debtor has not disputed Mr. Hayes' assertion.

on the part of Financial.[6] Financial, which had moved for relief from the automatic stay on June 29, 1995, denied the Debtor's request for rescission through its attorney on July 17, 1995.

On July 13, 1995, Mr. Brown brought this adversary proceeding against Financial on the Debtor's behalf. Through the Complaint, he seeks the following forms of relief: (1) a declaration that the September 9, 1988 note and mortgage and, therefore, the May 17, 1995 foreclosure sale are null and void; (2) the return of "clear title to the property" to Mr. Brown; (3) a preliminary injunction barring Financial from conveying the property and evicting Mr. Brown and, presumably, the Debtor; (4) a permanent injunction "barring Financial from interfering with the Guardian's ownership of the property;" (5) an order requiring Financial to render an accounting of its transactions with Mr. Brown; (6) an order requiring Financial "to return to the Guardian all finance charges, interest, and other costs pertaining to the promissory note;" (7) actual damages; and (8) attorney's fees and costs.

On August 2, 1995, the Chapter 7 Trustee filed a notice of abandonment of the property pursuant to 11 U.S.C. § 554 on grounds that the property had been foreclosed prepetition and that "there would be no benefit to the estate in attempting to set aside the transfer because there is no equity for the estate in the property over the debtor's exemption and the existing liens." Accordingly, the Trustee did not object to Financial's motion for relief from stay.

At a hearing on August 2, 1995, the Court granted Financial's motion for relief from stay. On August 4, 1995, the Court allowed the Debtor's motion to convert the case from Chapter 7 to Chapter 13. The Court then stayed its order of August 2, 1995 granting Financial relief from the automatic stay and ordered the Debtor to file a Chapter 13 plan by August 9, 1995. On August 10, 1995, the Court held another hearing and continued the stay. The Court also granted the Debtor a *lis pendens* on the property and ordered the Debtor to pay Financial $500.00 per month for use and occupancy, commencing on August 18, 1995 and continuing on the 18th day of each succeeding month, pending the outcome of this adversary proceeding.

## III. THE POSITIONS OF THE PARTIES

### A. *The Debtor*

The Debtor first argues that summary judgment should not be granted because the issue of whether the mortgage and the subsequent foreclosure sale were valid is disputed by the parties. She seeks an opportunity to present evidence of her incompetence in 1988, which, if proven, would render the mortgage invalid and Financial's foreclosure pursuant to the power of sale contained in the mortgage void. The Debtor contends that, although she would have no standing to bring this proceeding if Financial had sold the property to an "innocent third party," she retains her right to rescind based upon incompetence because Financial itself purchased the property at foreclosure. Additionally, the Debtor argues that Financial violated federal and state truth in lending laws when it extended credit to her, for which she seeks rescission of the note and mortgage as well as civil damages.

The Debtor also argues that her guardian was not certified until after the foreclosure sale had occurred. Thus, she maintains that "there was no person competent, who had standing to object, to file a petition, to bring a complaint, to retain a lawyer, to negotiate with Financial, or to do anything to stop the foreclosure sale." According to the Debtor, because Financial had known of the guardianship petition pending in the Probate Court since the Fall of 1994, it should have pursued a remedy in that forum rather than exercising the power of sale. In the Debtor's view, Financial could have petitioned for an appointment of a guardian upon whom to serve legal process, or could have sought authorization from the Probate Court to conduct a foreclosure sale.

---

**6.** The June 19, 1995 letter was not introduced into evidence, but both parties' pleadings characterize the letter as a notice of rescission.

Lastly, the Debtor appeals to this Court's equitable powers. She suggests that, in light of "the secondary mortgage scams of the 1980's," as well as remedial measures taken by the Attorney General and other regulatory agencies, this Court should "use its equity powers to undo overreaching by the lender."

## B. *The Defendant*

Financial contends that, because the foreclosure occurred pre-petition, the Mattapan property does not constitute property of the estate and is, therefore, beyond the reach of the Debtor, the Court and the Trustee. Moreover, it argues that its foreclosure of the mortgage terminated both (1) the Debtor's right to rescind the loan under federal and state truth in lending laws; and (2) her right to raise incompetency to set aside the mortgage.

According to Financial, it had no knowledge of the Debtor's alleged incompetence until it began foreclosure proceedings. At that time, it learned only of the Debtor's *present* incompetence. Financial was not informed that the Debtor would raise defenses to the mortgage based upon both truth in lending violations and incompetence at the time that she granted the mortgage to Financial until after the foreclosure sale had taken place. Therefore, Financial argues, it was not required to seek the Probate Court's authorization to foreclose the mortgage.

Alternatively, Financial contends that (1) the guardian is liable for the delay in his appointment by virtue of his failure to pay the necessary bond, and (2) even without a guardian, a bankruptcy petition could have been filed or a temporary restraining order preventing the foreclosure could have been sought in state court on the Debtor's behalf. Because the Debtor, her guardian and her counsel failed to act in a timely manner, Financial maintains that her claims "should be barred by the equitable theories of waiver, laches and estoppel," and that the Court

7. Section 541 provides in part:
(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

should not reward the Debtor's inaction by granting her "relief not afforded to all other debtors."

## IV. DISCUSSION

### A. *Standards for Summary Judgment*

The Court shall enter summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R.Civ.P. 56(c), made applicable to this proceeding by Fed.R.Bankr.P. 7056. The Court must draw from the facts all reasonable inferences in the light most favorable to the party opposing summary judgment, in this case, the Debtor. *See, e.g., In re Varrasso,* 37 F.3d 760, 763 (1994). To avoid summary judgment, the Debtor "must establish the existence of at least one question of fact that is both 'genuine' and 'material.'" *Id.* at 763, n. 1 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. *Analysis*

The first issue to be decided is whether the subject property, having been foreclosed prepetition, constitutes property of the Debtor's estate. Under 11 U.S.C. § 541, a bankruptcy estate comprises all property in which the Debtor has a legal or equitable interest.[7] Therefore, the Court must look to state law to determine whether the Debtor in this case retains an interest in the foreclosed property. *See Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979); *In re Massachusetts Automatic Transmissions, Inc.,* 35 B.R. 328, 330 (Bankr.D.Mass.1983). The Debtor has proffered a number of legal theories to establish entitlement to the relief she requests. The Court shall examine these theories seriatim.

(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.
11 U.S.C. § 541(a)(1).

### 1. *Redemption*

Under Massachusetts law, prior to foreclosure, a mortgagor who is in breach of a condition of a mortgage may redeem his or her land by tendering payment to the mortgagee. Mass.Gen.Laws Ann. Ch. 244, §§ 18–19 (West 1988 & Supp.1995). However, the right of redemption terminates once the property is foreclosed by the mortgagee. G.L. c. 244 § 18.[8] A mortgagor is not entitled to redeem real estate that has been foreclosed pursuant to a mortgagee's power of sale once the memorandum of sale has been executed. *See also Outpost Cafe, Inc. v. Fairhaven Savings Bank,* 3 Mass.App.Ct. 1, 7, 322 N.E.2d 183 (1975). The statute does not leave mortgagors without protection, however, because a condition precedent to cutting off the mortgagor's right of redemption is that the "foreclosure sale is fairly conducted and there is no defect in the proceedings." *White v. Macarelli,* 267 Mass. 596, 599, 166 N.E. 734 (1929). In *White,* the court stated that the mortgagee "was required to conduct the sale in good faith with reasonable regard to the interests of the owners of the equity." *Id.* at 598, 166 N.E. 734. *See also F.D.I.C. v. Smith,* 848 F.Supp. 1053, 1059 (D.Mass.1994). Thus, the Court must consider whether Financial complied with the statutory requirements and whether it conducted the foreclosure sale in good faith. If so, then the foreclosure was valid and the property does not constitute property of the Debtor's bankruptcy estate.

The Court finds that Financial complied with the notice provisions of G.L. c. 244, § 14 by publishing the advertisement in *The Boston Globe* "once in each of three successive weeks" and by notifying the Debtor of the foreclosure sale by certified mail. Mr. Hayes, in his affidavit filed in connection with the motion for relief from stay, simply states that he notified the Debtor of the sale by certified mail. He fails to indicate whether he sent the notice within the period of time required by the statute, and he failed to attach copies of the notice itself or the return receipt to his affidavit. However, despite these omissions, the Debtor does not dispute that she received notice of the foreclosure sale[9] and she does not dispute Mr. Hayes's assertion that he complied with the requirements of G.L. c. 244, § 14.[10]

Even if Financial fully complied with the statutory requirements and its power of sale, the sale could still be invalidated upon a showing that Financial failed to act in good faith in foreclosing the mortgage. *DesLauries v. Shea,* 300 Mass. 30, 34, 13 N.E.2d 932 (1938); *Sandler v. Silk,* 292 Mass. 493, 496, 198 N.E. 749 (1935). The Debtor bears the burden of proving that Financial failed in its duty to act in good faith. *West Roxbury Co-operative Bank v. Bowser,* 324 Mass. 489, 492, 87 N.E.2d 113 (1949).

Although the Debtor's memorandum suggests that Financial may have been the only bidder at the auction, this circumstance does not evidence bad faith. *Id.* at 493, 87 N.E.2d 113. Likewise, Financial's bid of only the outstanding loan amount is not indicative of bad faith. *Id.* at 492–493, 87 N.E.2d 113. The Debtor argues that Finan-

---

**8.** Section 18 provides in relevant part:

> The mortgagor or person claiming or holding under him may, after breach of condition, redeem the land mortgaged, unless . . . the land has been sold pursuant to a power of sale contained in the mortgage deed.

G.L. c. 244, § 18. Therefore, because Massachusetts law applies, the cases cited by the Debtor in her Supplemental Memorandum which are based upon the laws of other jurisdictions which allow redemption after foreclosure are irrelevant to this proceeding.

**9.** G.L. c. 244 § 14 is silent as to whether the notice must have been received by the mortgagor in order to be effective. Two cases in which the issue was raised reached contradictory conclusions. *Compare Hull v. Attleboro Savings Bank,* 25 Mass.App.Ct. 960, 963, 519 N.E.2d 775 (1988), *review denied,* 402 Mass. 1102, 523 N.E.2d 267 (1988), *cert. denied,* 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988), *with Mutual Bank for Savings v. Silverman,* 13 Mass. App.Ct. 1059, 1060–1061, 434 N.E.2d 1027 (1982). However, since the Debtor has not denied that she received the notice, the Court accepts as true Financial's contention that it notified the Debtor of its intent to foreclose.

**10.** Although neither party discussed whether Financial complied with the Soldiers and Sailors Civil Relief Act or whether the Debtor was entitled to the benefit of that statute, the Debtor has not challenged Mr. Hayes's statement that he fully complied with G.L. c. 244 § 14.

cial, which had knowledge of the guardianship petition, should have sought the appointment of a guardian for the Debtor in the Probate Court or requested that court's permission to foreclose the property. Her contention is without merit. The statute does not require Financial to litigate its right to foreclose the mortgage in the Probate Court simply because a guardianship petition has been filed. Moreover, at the time that it learned of the pending guardianship petition, Financial was not apprised that the Debtor would allege that her incompetence dated back to 1988, when she signed the note and mortgage.

■ Additionally, this Court cannot accept the Debtor's argument that she was powerless to prevent Financial from foreclosing the mortgage. Clearly, the Debtor could have and should have filed her bankruptcy petition prior to the May 17, 1995 foreclosure. The Court does not agree that, at or around the time of the foreclosure, "there was no person competent ... to file a [bankruptcy] petition." Mr. Brown's guardianship petition was filed on October 5, 1994, and he was appointed temporary guardian of the Debtor on October 17, 1994, several months before the foreclosure. A guardian may file a bankruptcy petition on behalf of an incompetent person even if the guardian is not specifically authorized by a court to do so. *See In re Zawisza,* 73 B.R. 929, 935 (Bankr. E.D.Pa.1987); *but see In re Smith,* 115 B.R. 84, 85 (Bankr.E.D.Va.1990). Additionally, Fed.R.Bankr.P. 7017 provides that:

> "If an ... incompetent person does not have a duly appointed representative he may sue by a next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an ... incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the ... incompetent person."

*See also In re Gerst,* 106 B.R. 429, 430 (Bankr.E.D.Pa.1989) (appointing debtor's mother as guardian ad litem because the debtor suffered from a "severe mental illness, requiring periodic hospitalization"). Thus, even if Mr. Brown had not been appointed as temporary guardian, the Debtor,

with assistance from her counsel, could have filed a bankruptcy petition prior to the foreclosure.

Moreover, since the Debtor does not dispute that she had notice of Financial's intent to foreclose, there was ample opportunity for Mr. Brown to post the bond required for certification and obtain a surety on the bond, if necessary, and then file the petition prior to the scheduled May 17, 1995 foreclosure. Alternatively, Mr. Brown or the Debtor, by her counsel, could have sought an injunction or a temporary restraining order in state court to prevent Financial from foreclosing until the incompetency issue had been resolved. *See Oakville Development Corp. v. F.D.I.C.,* 986 F.2d 611 (1st Cir.1993). The Court notes that the Debtor's counsel is the same attorney who represented Mr. Brown in the *guardianship* matter. Thus, the Court rejects the Debtor's argument that "there was no person competent ... to do anything to stop the foreclosure sale."

The Debtor, her guardian and her counsel acted too late to assert her right to redeem the property. Since the foreclosure proceeding was not defective, the Debtor's equity of redemption was barred as of the May 17, 1995 foreclosure. Accordingly, the Debtor had no legal or equitable interest in the Mattapan property under this theory, it is not property of the estate, and Financial is entitled to summary judgment on the issue of redemption.

### 2. *Truth in Lending*

■ The Debtor sent a rescission notice to Financial one month after the foreclosure sale. In the letter, which is not before the Court, and in her Complaint, she alleges that Financial violated the disclosure provisions of the Truth in Lending Act, 15 U.S.C. §§ 1601–1667e (West 1982 & Supp.1995) ("TILA"), and the Massachusetts Consumer Credit Cost Disclosure Act, Mass.Gen.Laws Ann. Ch. 140D, §§ 1–34 (West 1991 & Supp. 1995) ("CCCDA"), at the time that it entered into the loan transaction with the Debtor. She further alleges that Financial violated TILA "by failing to make numerous required disclosures clearly and conspicuously, along with other violations." She does not set forth specific violations nor does she claim

that Financial failed to deliver the required disclosures and rescission forms to her. However, assuming for purposes of the Defendant's motion that Financial failed to comply with the disclosure requirements of TILA and CCCDA, the Court concludes that the Debtor's right to rescind is barred by both the foreclosure of the mortgage and the statute of limitations.

Under TILA, "an obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first. . . ." 15 U.S.C. § 1635(f). The Debtor's right to rescind the loan under TILA expired on September 9, 1991, long before the foreclosure and the filing of her bankruptcy petition. Alternatively, even if the statute of limitations had not expired, the Debtor's claim is barred by the foreclosure sale. According to the Official Staff Commentary to Regulation Z, which was promulgated by the Board of Governors of the Federal Reserve System to implement TILA, "[a] sale or transfer of the property need not be voluntary to terminate the right to rescind. For example, a foreclosure sale would terminate an unexpired right to rescind." Official Staff Commentary to Reg. Z, § 226.23(a)(3).

CCCDA and the regulations promulgated thereunder essentially mirror the provisions of TILA and Regulation Z. The major difference is the statute of limitations. Whereas TILA allows consumers three years to rescind, CCCDA provides a four-year statute of limitations. G.L. c. 140D, § 10(f); 209 C.M.R. § 32.23(1)(c). Thus, the statute of limitations for the Debtor's claim under CCCDA expired on September 9, 1992. Alternatively, the foreclosure bars the Debtor's attempted rescission. *Id.*

■■■■ Citing 15 U.S.C. § 1640(e), the Debtor contends that "claims under TILA can be raised defensively in an action to collect a debt, beyond the limitations period, by recoupment, except as otherwise provided by state law." Section 1640 does not apply to rescission but rather enables consumers to institute actions for damages based upon a lender's TILA violations. Section 1640 provides in relevant part the following:

(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, . . . with respect to any person is liable to such person in an amount equal to the sum of—

> (1) any actual damage sustained by such person as a result of the failure;
>
> (2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, . . . ; and
>
> (3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court. . . .

(e) Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by state law.

15 U.S.C. § 1640. The Debtor cannot rely upon § 1640(e) to rescind the transaction after the statute of limitations has expired and the property has been foreclosed. Although neither party briefed the issue of whether the Debtor could raise TILA defensively as an action in the nature of recoupment against the prepetition foreclosure and Financial's motion for relief from stay, the Court need not decide this issue. The Court finds that, by not alleging specific violations of TILA that would entitle her to damages, the Debtor has failed to raise a genuine issue of material fact to overcome the Defendant's motion for summary judgment.

### 3. *Incompetence*

■■■ Even though the Debtor is barred from redeeming the property and from re-

scinding the note on truth in lending grounds, the issue remains whether she can rescind the loan because of her alleged incompetence at the time that she signed the note and mortgage in 1988. The Debtor argues that her right to rescind based upon incompetence survives the foreclosure and may now be asserted against Financial since it is both the mortgagee and the purchaser of the property, and no bona fide purchaser has intervened in the chain of title. Financial's memorandum fails to differentiate between the right to redeem mortgaged property and the right to rescind a transaction based upon incompetence.

■ Under Massachusetts law, contracts entered into by incompetent persons are not void, as the Debtor alleges, but rather voidable.[11] *See Krasner v. Berk*, 366 Mass. 464, 468, 319 N.E.2d 897 (1974); *Sutcliffe v. Heatley*, 232 Mass. 231, 233, 122 N.E. 317 (1919); *Farnum v. Silvano*, 27 Mass.App.Ct. 536, 540 N.E.2d 202 (1989). In *Farnum*, the Massachusetts Appeals Court ordered rescission of a conveyance because the purchaser knew or had reason to know of the seller's incompetence at the time that the property was sold. The incompetent seller was required to return the consideration paid to the buyer in exchange for the buyer's delivery of a deed to the property to the incompetent seller. The court stated that "[t]he object of rescission is to arrive so far as possible at full restoration of the status quo before the transaction which is being cancelled." 27 Mass.App.Ct. at 540–541, 540 N.E.2d 202 (citations omitted).[12]

■ Financial argues, and the Debtor concedes, that it had no knowledge of her incompetence at the time that it entered into the loan transaction with her in 1988. However, it is no defense to avoidance of the contract that one party did not know of the other's incompetence. *Reed v. Mattapan Deposit & Trust Co.*, 198 Mass. 306, 314, 84 N.E. 469 (1908); *Sutcliffe*, 232 Mass. at 233, 122 N.E. 317. In *Krasner*, the court found that although there was evidence that the

11. The statute of limitations is not an issue. Mass.Gen.Laws Ann. Ch. 260, § 7 (West 1992 & Supp.1995) provides that "[i]f the person entitled thereto is ... incapacitated by reason of mental illness when a right to bring an action first accrues, the action may be commenced within the time hereinbefore limited after the disability is removed." *See generally O'Brien v. Massachusetts Bay Transportation Authority*, 405 Mass. 439, 541 N.E.2d 334 (1989).

12. With respect to the restoration of the status quo, the Restatement of Contracts provides guidance:

(1) A person incurs only voidable contractual duties by entering into a transaction if by reason of mental illness or defect

(a) he is unable to understand in a reasonable manner the nature and consequences of the transaction, or

(b) he is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition.

(2) Where the contract is made on fair terms and the other party is without knowledge of the mental illness or defect, the power of avoidance under Subsection (1) terminates to the extent that the contract has been so performed in whole or in part or the circumstances have so changed that avoidance would be unjust. In such a case a court may grant relief as justice requires.

Restatement (Second) of Contracts, § 15 (1979). Comment e provides the following:

Where the contract has been performed in whole or in part, avoidance is permitted only on equitable terms.... Any benefits still retained by the incompetent must be restored or paid for.... If the other party knew of the incompetency at the time of contracting, or if he took unfair advantage of the incompetent, consideration not received by the incompetent or dissipated without benefit to him need not be restored.

*Id.* cmt. e.

Additionally, Comment f provides that:

If the contract is made on fair terms and the other party has no reason to know of the incompetency, performance in whole or in part may so change the situation that the parties cannot be restored to their previous positions or may otherwise render avoidance inequitable. The contract then ceases to be voidable. Where the other party, though acting in good faith, had reason to know of the incompetency at the time of contracting or performance, or where the equities can be partially adjusted by the decree, the court may grant or deny relief as the situation requires. Factors to be taken into account in such cases include not only benefits conferred and received on both sides but also the extent to which avoidance will benefit the incompetent and the extent to which others who will benefit from avoidance had opportunities to prevent the situation from arising.

*Id.* cmt. f.

defendant knew of the plaintiff's incompetence, the avoidance of the contract did not turn upon knowledge of incompetence. 366 Mass. at 468, 319 N.E.2d 897.

The Debtor has not introduced affidavits of medical experts but rather has asked the Court for additional time to produce an affidavit from her psychologist discussing her mental capacity at the time she executed the note and mortgage. However, the affidavits of both her son and daughter raise the issue of the Debtor's competence at the time of the transaction, and, therefore, a genuine issue of material fact exists. The Court denies Financial's motion for summary judgment on the issue of whether the Debtor is entitled to rescind the note and mortgage based upon incompetence.

## V. CONCLUSION

In accordance with the foregoing, the Court concludes that Financial is entitled to judgment as a matter of law on the issues of redemption and truth in lending and therefore ALLOWS in part the defendant's motion for summary judgment. The motion is DE-NIED with respect to the issue of whether the Debtor can rescind the note and mortgage based upon her incompetence. At the trial scheduled for November 8, 1995, the Court shall consider testimony relating to the Debtor's competence and the total sums paid by the Debtor to Financial since the inception of the loan.