# United States Court of Appeals
## For the First Circuit

No. 12-1032

BACARDÍ INTERNATIONAL LIMITED,

Petitioner, Appellant,

v.

V. SUÁREZ & CO., INC.,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Lynch, Chief Judge,
Lipez and Thompson, Circuit Judges.

Ricardo F. Casellas, with whom Rosalie Irizarry-Silvestrini,
Natalia Morales, and Casellas Alcover & Burgos, P.S.C., were on
brief, for appellant.
Francisco G. Bruno, with whom Manuel Moreda-Toledo, Omar
Oquendo-Claudio, Kevin M. Acevedo-Carlson, and McConnell Valdés LLC
were on brief, for appellee.

May 8, 2013

**LYNCH, <u>Chief Judge</u>**.  This federal case seeks confirmation of an arbitration award made at the first, non-liability stage of arbitration as to a contract, and was filed approximately one month after the arbitral opponents had filed a petition in the Puerto Rico Court of First Instance to vacate the same award.

We have to answer two questions.  The first is whether the federal district court had jurisdiction, despite its conclusion that it did not.  The second is whether the federal court should stay its hand where the Court of First Instance confirmed the award on July 23, 2012, and that decision has been pending on appeal in the Court of Appeals since August 22, 2012.  We answer both questions affirmatively.

As to jurisdiction, the court concluded that an absent party, Bacardí Corporation ("BC"), was an indispensable party whose joinder would destroy complete diversity.  On this question, we address whether BC, a party to an arbitration, which became a successor party to the disputed contract, but which is absent from this federal case brought to confirm the arbitration panel's limited award (that certain contract damages provisions are valid and binding), is a required party under Fed. R. Civ. P. 19.  On the facts presented, we conclude that the district court abused its discretion; it engaged in an incomplete Rule 19(a) analysis, and its conclusions under Rule 19 were wrong.  As a result, the

proceeding should not have been dismissed for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

Given the existence of a first-filed parallel case now on appeal in the local Puerto Rico courts involving the same issues, which includes BC and all of the parties to the arbitration, we direct the district court to stay these proceedings while the proceedings in the Commonwealth courts are resolved.

I.

A.      Factual Background

The underlying arbitration resulted from the non-renewal of a sub-distribution agreement between V. Suárez & Co., Inc. ("VSC") and Bacardí Caribbean Corporation ("BCC"). We review the events leading to the sub-distribution agreement, and explain the various corporate entities involved and their relationships to each other.

The petitioner, Bacardí International Limited ("BIL"), is a Bermuda corporation engaged in the sale, promotion, and distribution of Bacardí Rum products and other alcoholic beverages. BIL holds the sole and exclusive rights and authority to exploit and use commercially the trademarks and related intellectual property of the Bacardí brands. Its wholly-owned subsidiary, Bacardí & Company Limited ("BACO"), a Liechtenstein corporation, is the registered owner and holds legal title to the trademarks and intellectual property.

On November 1, 1998, BIL entered into a distribution agreement with BCC,[1] which granted BCC the exclusive right, privilege, and responsibility to sell and promote the sale of the products covered by the agreement in Puerto Rico. Even though Bacardí was the top selling brand of rum in Puerto Rico in 2004, the distribution arrangement had become unprofitable for BCC. Around the year 2000, BCC stopped distributing certain other brands of alcohol, which left it with too high a cost structure. If the costs of delivery could be shed, BCC would improve its profitability, and so it contemplated alternative arrangements whereby profits could be shared with a sub-distributor that would absorb certain costs of distribution. Eventually, in August 2004, BCC executed an agreement with VSC, a Puerto Rico corporation with revenues of more than $600 million in 2004. VSC is one of Puerto Rico's major corporations, which, at the time of the agreement, distributed over 140 brands of products, had an inventory of over 1300 stock keeping units, and was known to use its leverage in contract negotiations. For VSC, adding Bacardí Rum to its line of products would make it the leading distributor of distilled products in Puerto Rico.

The sub-distribution agreement between VSC and BCC provided for VSC to have the exclusive right to sell and sub-

---

[1] The original agreement was actually with Bacardí-Martini Caribbean Corp., the predecessor of BCC.

distribute the covered products in Puerto Rico. BIL consented to the agreement, as did BC, an entity we discuss later. The agreement included grounds to permit termination for "just cause," limitations on damages, and provisions for dispute resolution requiring arbitration.

Of particular relevance are the damages provisions contained in sections 9.4 and 9.5 of the contract. In section 9.4, VSC agreed that "[u]pon expiration or termination of the Agreement in accordance with the terms and conditions hereof," it "shall have no rights or claims to compensation of any kind whatsoever" from any Bacardí entity, including compensation for expenditures for advertising, marketing, sales, or promotion activities, certain capital investments, or for any goodwill VSC might establish. VSC also agreed, in section 9.5, that any damages it could recover against BCC (of which BC became the successor) would be offset by roughly $2.1 million on a per-year basis because the distribution rights had a value and VSC had not paid for that value.

About two years after the sub-distribution agreement was executed between BCC and VSC, on April 1, 2006, BCC consummated a merger with Castleton Holdings, Inc., the surviving corporation, which then merged with BC, the surviving entity of that merger. BC is both a Delaware and a Puerto Rico corporation and is the producer of Bacardí Rum and other alcoholic products in Puerto Rico. BC and BIL are both members of the Bacardí family of

companies, as both are wholly-owned subsidiaries of Bacardí Limited.

The dispute resulting in arbitration began on May 29, 2009, when the president and CEO of BC notified VSC by letter that BC (as successor to BCC) did not intend to renew the sub-distribution agreement. The letter stated that BC intended to use the alternative dispute resolution mechanism in the sub-distribution agreement to resolve any disputes arising out of or related to the non-renewal of the agreement.[2]

On October 8, 2009, BIL, BC, and BCC filed a demand for arbitration against VSC. The Bacardí entities made two claims in the demand: (1) a declaration that the $2.1 million offset provision was valid and binding; and (2) in the alternative, that the Bacardí entities had just cause to terminate or refuse to renew the sub-distribution agreement. If the pertinent damages provision were declared valid, VSC would not be entitled to any monetary recovery because VSC's net profit from the prior fiscal year did not exceed the offset amount, or so BC alleged.

---

[2] The provision provides that the parties "shall first consult and negotiate with each other, in good faith and recognizing their mutual interests, and attempt to reach a prompt, just and equitable solution to the Dispute that is satisfactory to both parties." If direct negotiations do not resolve the dispute within thirty days after one party provides written notification to the other of the existence of a dispute, either party can exercise its right to have the dispute resolved through arbitration.

On November 3, 2009, VSC, accepting arbitration, filed a response to the demand and its own counterclaim. VSC asserted that certain damages provisions in the sub-distribution agreement, including the offset provision and other provisions that barred compensation for certain expenses and investments, were null and void because they violated Law 75, P.R. Law Ann. tit. 10, § 278 et seq. VSC also denied that BC had just cause not to renew or to terminate the contract and asserted that it was entitled to receive damages in excess of $30 million under Law 75.[3]

The arbitration panel consisted of three neutral attorneys admitted to practice law in Puerto Rico. Rather than deal with all the issues before it in one proceeding, the arbitration panel bifurcated the proceedings to decide first whether the contested provisions of the contract were valid and binding. As a result, the panel would not pass on the just cause defense, VSC's claims for damages, or the Bacardí entities' other defenses until a later time, and then only if necessary. In other words, at the first stage, liability was not at issue, only the validity of certain clauses. It is the first portion of the bifurcated proceedings that has led to the federal case now before

---

[3] In response to VSC's response, BIL, BC, and BCC asserted additional claims under Puerto Rico law for wrongful and/or fraudulent misrepresentations and omissions, breach of the duty to negotiate in good faith, and fraud.

us.  The parties inform us that there has been no second stage of the bifurcated proceedings to date.

The panel issued a Final Partial Award (the "Award") on the bifurcated issue on July 19, 2011.  In a seventy-two page opinion, the panel found the contested provisions, including the offset and the limitations on compensation for certain expenses and investments, to be valid and enforceable.[4]  The majority wrote:

> The parties thus agreed on an amicable, pre-established method to handle a post-termination scenario in case [VSC] decided to apply Law 75 against a supplier for the first time in its history as a distributor.  They settled not on a waiver of Law 75 damages, but on a on a [sic] way to calculate them with the statute specifically in mind.  Theirs was an agreement between sophisticated parties, free (not forced) to do what was in their best business interest and fully aware (not misled) as to the advantages and consequences of what they were doing in pursuit of those business interests.  All within an integrated agreement that allowed [VSC] to distribute products it did not distribute before and gain the benefit of the prior distributor's development of the market for 30 years or so without any up-front cost to [VSC].

The panel did not decide if the validity of those provisions meant that VSC could not recover any monetary damages as the Bacardí entities alleged, nor did it decide any other issues on liability.

---

[4] One member of the three-member panel dissented and would have found the provisions barring recovery for certain expenses and investments, and the offset provision, to be null and void as contrary to Law 75.

Since then, the arbitration has not continued while the parties have been waging pitched battles over the first stage of the arbitration in both federal and Commonwealth courts.

B.      Procedural History

Dissatisfied with the Award, VSC, on August 5, 2011, initiated a special proceeding against BC, BCC, and BIL before the Court of First Instance in Puerto Rico seeking to vacate the Award. VSC argued that the Award should be vacated because: (1) the Award was untimely under Puerto Rico law;[5] (2) the Award was contrary to law and public policy; and (3) the arbitrators were biased.[6]  VSC's memorandum made no explicit federal claims.

On September 1, 2011, BIL, BC, and BCC filed a notice of removal in the federal district court in Puerto Rico.  The Bacardí entities asserted that diversity subject-matter jurisdiction existed under 28 U.S.C. § 1332(a)(2), on the grounds that BIL was the only real party-in-interest since the Award "validates certain contractual provisions recognizing BIL's exclusive ownership rights of the distribution value and goodwill generated from the sale of BIL's Bacardí-owned brands in Puerto Rico."

---

[5] Although the parties have briefed the merits of confirming and vacating the Award on appeal, the timeliness issue was not raised in their appellate briefs.

[6] In the motion filed in the Court of First Instance, VSC argued for vacatur under standards of review of arbitral awards under Puerto Rico law.

-9-

The next day, BIL filed a separate action, this case, in federal court, in its name only, moving to confirm the Award under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq. The removed matter and BIL's FAA confirmation proceeding were consolidated on September 20, 2011.

On September 29, 2011, VSC sought to remand the removed action. VSC also sought to dismiss BIL's federal action under Fed. R. Civ. P. 12(b)(1). The heart of VSC's argument was that BC, a Puerto Rico corporation, was a required and indispensable party under Fed. R. Civ. P. 19, and since it was non-diverse with VSC, diversity jurisdiction was lacking in both matters.[7]

On December 5, 2011, the district court issued an opinion and order addressing the removal of VSC's case and the jurisdictional questions raised by BIL's case. The district court remanded the removed VSC case.[8] The court held that VSC's

---

[7] BIL and VSC also both provided memoranda of law to the district court on the merits of the motions to confirm and vacate the Award. The district court had denied a motion by VSC to stay the proceedings until the court made a jurisdictional determination. In its memorandum opposing BIL's motion to confirm the Award, VSC briefed the alleged grounds for vacatur under the FAA for argument purposes, while claiming that Puerto Rico law should apply.

[8] The remand order of VSC's action to the Commonwealth courts is not subject to appeal, 28 U.S.C. § 1447(d), and is not before us. VSC argues that the remand order precludes the issues BIL raises on appeal because of issue preclusion. Not so. The remand decision only determined that BC's interest in the litigation is real, not whether BC is a required party under Rule 19, the issue before us. See Faigin v. Kelly, 184 F.3d 67, 78 (1st Cir. 1999) (under federal common law identity of issues required for issue

-10-

inclusion of BC in the case removed from state court was proper because BC's interest in the litigation was real. BC was not just a nominal party named to destroy jurisdiction. The court had to consider BC's citizenship in the jurisdictional analysis and that divested the federal court of jurisdiction because BC and VSC are both citizens of Puerto Rico.[9]

The court dismissed BIL's federal case. The district court found that BC was an indispensable party under Fed. R. Civ. P. 19(b), that BC's presence would destroy diversity, and that VSC's Rule 12(b)(1) motion should be granted.[10]

On December 9, 2011, BIL filed a timely appeal from the court's order of dismissal. Before arguments were heard in ths matter, the Commonwealth Court of First Instance decided the remanded case on July 23, 2012. The Court of First Instance denied

---

preclusion); see also García-Monagas v. De Arellano, 674 F.3d 45, 54-55 (1st Cir. 2012) (same under Puerto Rico law).

[9] The district court determined that BCC was not a proper party because it was effectively dissolved on April 1, 2006 by its merger into Castleton Holdings. Under Puerto Rico law, P.R. Law Ann. tit. 14, § 3708, BCC remained open to suit only until April 1, 2009. So, BCC could not destroy complete diversity.

[10] The court found that all four Rule 19(b) factors favored a finding of indispensability, stating that: (1) BC's interests are implicated in the confirmation proceeding and an adverse decision would expose BC to significant financial loss; (2) it could think of no measure to alleviate any prejudice to BC due to BC's absence; (3) judicial resources would be conserved if the local court, which had the remanded action, decided the issues; and (4) BIL had an alternative adequate remedy by proceeding in the local Puerto Rico court.

VSC's request to vacate the Award and confirmed the Award. It ruled that: the FAA, not Puerto Rico law, provided the proper standards of judicial review; the arbitration panel acted with integrity and impartiality; manifest disregard of the law and violation of public policy are not proper grounds for vacatur under the FAA; and that even if they were valid grounds, the Award was still valid and in accord with Law 75.

On this appeal of the district court's dismissal of BIL's federal case, BIL makes sweeping arguments that Rule 19 is inapplicable[11] because it is preempted by the FAA, and also argues

---

[11] More specifically, the parties engage in a lively debate about whether there is federal jurisdiction over petitions to review arbitral decisions regardless of whether a party which is required and indispensable under Rule 19 is absent and that party's presence would destroy diversity jurisdiction.

BIL argues that Rule 19 does not apply to confirmation proceedings because Fed. R. Civ. P. 81(a)(6)(B) states that the Rules of Civil Procedure do not apply to arbitration-related proceedings where the FAA provides other procedures. Because Section 9 of the FAA states that "any party to the arbitration may apply to the court" for "an order confirming [an] award, and thereupon the court must grant such an order," 9 U.S.C. § 9, BIL argues the FAA negates the standards in Rule 19. BIL argues that its reading would not expand federal court jurisdiction, because Rule 19 is an equitable and not a jurisdictional rule. BIL also argues that if Rule 19 is not preempted by the language of section 9 of the FAA, Rule 19 would effectively, and improperly, expand the grounds for a court to refuse to confirm an award under section 10 of the FAA. BIL also makes a less developed argument that section 6 of the FAA, which states that any application under the FAA "shall be made and heard in the manner provided by law for the making and hearing of motions," id. § 6, preempts Rule 12 defenses, including Fed. R. Civ. P. 12(b)(7) (failure to join an indispensable party). We have no reason to reach these issues.

that, in any event, the district court erred in its Rule 19 analysis.

We agree with BIL's narrower argument that the district court erred in its Rule 19 analysis. As a result, we do not reach BIL's arguments about whether the FAA preempts Rule 19, nor need we discuss the relationship between diversity subject-matter jurisdiction and Rule 19. See Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 22 n.19 (1st Cir. 2008) (stating Rule 19 inquiry is equitable, but conclusion that non-diverse party is indispensable destroys diversity).

## II.

We review a district court's conclusion regarding the lack of subject-matter jurisdiction de novo, and its findings of fact for clear error. Valentin v. Hosp. Bella Vista, 254 F.3d 358, 365 (1st Cir. 2001). The court's Rule 19 determination is reviewed for abuse of discretion. Picciotto, 512 F.3d at 14-15. An error of law is an abuse of discretion. Aronov v. Napolitano, 562 F.3d 84, 88 (1st Cir. 2009) (en banc). An abuse also "occurs when a court, in making a discretionary decision, relies upon an improper factor, neglects a factor entitled to substantial weight, or considers the correct mix of factors but makes a clear error of judgment in weighing them." Matamoros v. Starbucks Corp., 699 F.3d 129, 138 (1st Cir. 2012).

Rule 19 addresses situations where a lawsuit is proceeding without a party whose interests are central to the suit. Picciotto, 512 F.3d at 15. The Rule provides for joinder of required parties when feasible, Fed. R. Civ. P. 19(a), and for dismissal of suits when joinder of a required party is not feasible and that party is indispensable, Fed. R. Civ. P. 19(b). The Rule calls for courts to make pragmatic, practical judgments that are heavily influenced by the facts of each case. See Picciotto, 512 F.3d at 14-15; Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 635 (1st Cir. 1989);; see also 7 C. Wright & A. Miller, Federal Practice & Procedure § 1604 ("By its very nature Rule 19(a) calls for determinations that are heavily influenced by the facts and circumstances of individual cases . . . .").

We start with the problem that the district court failed to do a required party analysis, and if it did so without labeling its analysis as such, it failed to articulate why BC is a required party to this particular proceeding. If the court was wrong on its assumption that BC is a required party, then it was wrong to make an indispensability determination under Rule 19(b). Fed. R. Civ. P. 19; Picciotto, 512 F.3d at 15-16; Pujol v. Shearson/Am. Express, Inc., 877 F.2d 132, 134 (1st Cir. 1989).

It was an abuse of discretion for the court not to provide reasoned analysis on this required party point. Further, to the extent reasoning was provided, it is incomplete and

-14-

inadequate. That alone would warrant reversal. See, e.g., Bakia v. Los Angeles Cnty., 687 F.2d 299, 301-02 (9th Cir. 1982) (vacating and remanding where district court offered insufficient reasoning on Rule 19 analysis for appeals court to review).

We see no point in remanding this issue. The undisputed record before us is adequate to decide it, and the policies of the FAA encourage speedy and efficient resolution of judicial review of arbitral awards. Cf. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 29 (1983) (FAA calls for "speedy disposition" of motions to enforce arbitration clauses); T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 342 (2d Cir. 2010) (grounds for vacatur strictly limited to provide parties with "efficient dispute resolution"); Positive Software Solutions, Inc. v. New Century Mortg. Corp., 476 F.3d 278, 280 (5th Cir. 2007) (FAA narrowly restricts judicial review "[t]o assure that arbitration serves as an efficient and cost-effective alternative to litigation").

It is clear to us that BC is not a required party under Rule 19(a)(1) in the petition to confirm the first-stage arbitral award. We stress that this is not a question of whether BC would have been a required party if the contract dispute were being adjudicated in the district court and not in arbitration, nor is it an issue of the parties who were proper in the arbitration. VSC confuses the issues. Ours is the different issue of whether BC is

a required party in the petition to confirm given the limited nature of the arbitration award in the bifurcated arbitration and the very limited nature of judicial review.

Questions under Rule 19(a) are fact-bound and driven by the nature of the issues before the court. We reject any notion that the analysis required by Rule 19(a) may be displaced by a flat rule that whoever is a party to an arbitration, no matter how limited the award, is automatically a required party in a petition to confirm an award.

In a Rule 19 analysis, a court must first determine if an absent party is a "required party"[12] under Rule 19(a). Picciotto, 512 F.3d at 16. Rule 19(a) provides the standard, stating in relevant part:

> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>      (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>      (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>           (i) as a practical matter impair or impede the person's ability to protect the interest; or
>           (ii) leave an existing party subject to a substantial risk of incurring

---

[12] The Rule used to refer to a required party as a "necessary party." See Pujol v. Shearson/Am. Express, Inc., 877 F.3d 132, 134 (1st Cir. 1989). To be consistent with the term now used in the Rule, we use the phrase "required party."

> double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

A.      Rule  19(a)(1)(A):  Whether  in  BC's  Absence,
        Complete Relief Cannot be Afforded Among Existing Parties

Complete relief can be afforded among those already parties in BC's absence under Rule 19(a)(1)(A). The district court can easily confirm or vacate the Award with respect to BIL and VSC without BC being a party to this petition. See, e.g., Mastercard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.2d 377, 385 (2d Cir. 2006) (explaining that existing parties can resolve their dispute and obtain complete relief as to each other without absent party's presence although a dispute with absent party may be left unresolved); Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030, 1043 (9th Cir. 1983) ("McDonnell does not directly contend that the Government's absence would preclude the district court from being able to fashion meaningful relief as between the parties, and we discern no reason for so concluding." (emphasis added)). VSC argues that any relief would only be partial because it would not apply to BC and a different result could be reached in a local Puerto Rico court. But, we view those concerns as more relevant to the issues of prejudice and risk of inconsistent obligations, which, as we detail later, are not practical concerns on these facts.

VSC, then, must turn to the provisions of Rule 19(a)(1)(B) and its two subparts.

B.        Rule 19(a)(1)(B)(i): BC's Ability to Protect Its Interests Is Not Impaired

This subsection is concerned with protecting the interests of the absent party.  In the first place, BC does not claim it has an interest which will be impaired.  Rather, it is BC's opponent, VSC, which makes the claim.  Resolution of this petition in BC's absence will not impair or impede BC's ability to protect its interest.  Fed. R. Civ. P. 19(b)(1)(B)(i).

In this confirmation proceeding, BIL and BC have virtually identical interests -- the confirmation of the bifurcated award.[13]  In Pujol v. Shearson/Am. Express, Inc., 877 F.2d 132, then-Judge Breyer held that a subsidiary was not a required party under Rule 19(a) because the parent and subsidiary had "virtually identical" interests because they would each wish to show the same thing.  Id. at 135.  Here, BIL will argue that the Award should not be vacated because there is no bias, manifest disregard of the law, or violation of Puerto Rico's public policy.  That is exactly what BC would wish to show if it were present.

We do not read Shearson, as the district court did, as standing for the proposition that the absent party has to be a wholly-owned subsidiary of a present party for there to be

_____

[13] VSC has never claimed, including in its state court petition, that the bifurcation order should be set aside.

-18-

virtually identical interests in order to avoid the impairment of an absent party's interests. Moreover, <u>Shearson</u> makes clear that an absent party's interests cannot be harmed or impaired if they are identical to those of a present party. <u>Id.</u> ("[W]e fail to see how proceeding without [the absent party] would 'as a practical matter impair or impede' the [absent party's] interests, interests that [the present party's] counsel can adequately protect." (quoting Fed. R. Civ. P. 19(a)(1)(B)(i)). We do not suggest that the test requires "virtually identical" interests, only that such is the situation here. There is no divergence in interests between BC and BIL at this stage of the arbitration.

As an example, the facts in this case differ sharply from those in <u>Picciotto</u> where an attorney (Casher) was sued by former clients for malpractice in state court, 512 F.3d at 13-14, and those same clients also sued insurance companies, including Casher's malpractice insurer, for tortious interference with contractual relations in federal court, <u>id.</u> at 14. Casher's state settlement position could have been impaired by an adverse judgment in the federal case, and such an outcome also could have deprived Casher of insurance coverage in the state case against her. <u>Id.</u> at 17. Plainly, neither the plaintiffs nor the insurance company defendants, in defending themselves against the tortious interference claims, represented Casher's interests. The shared

interests of BIL and BC more closely resemble the situation in Shearson.

VSC argues that there is no virtual identity of interests as BIL only has, at best, a "fleeting interest" in the confirmation proceeding because BC is the successor to BCC and BCC negotiated the contract.

It is not true that BIL has no interest in the confirmation proceeding. Section 9.4(d) of the contract, which was one of the contested damages provisions, both affects BIL's rights, and provides more than a fleeting interest. The section states "[VSC] shall have no rights or claims to compensation of any kind whatsoever from any of the BCC Parties," and "BCC Parties" is defined in the contract as "BCC and any of its affiliates, and/or their respective directors, officers, employees, agents, or other representatives." BIL and BC are wholly-owned subsidiaries of the same entity, and are affiliates. Black's Law Dictionary 67 (9th ed. 2009) (defining affiliate as "[a] corporation related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation" (emphasis added)). Hence, BIL has an interest in the validity of that provision.

In addition, BIL's actions throughout the confirmation proceedings evidence a vigorous representation of BIL's interest in confirmation of the Award, which it holds in common with BC. In the district court BIL provided substantial briefing in an effort

-20-

to refute VSC's arguments for vacatur. Similarly on appeal, BIL has extensively briefed the merits of the confirmation request, seeking complete confirmation of the Award.[14] Where an existing party has "vigorously addressed" the interests of absent parties, we have no need to protect a possible required party from a threat of serious injury. See Nat'l Ass'n of Chain Stores v. New Eng. Carpenters Health Benefits Fund, 582 F.3d 30, 43-44 (1st Cir. 2009).

Further, BC has not taken any action to indicate that BIL cannot adequately represent its interests at this stage. In Picciotto, our circuit held an absent party was a required party where the absent party opposed litigation of a federal case without her. 512 F.3d at 16-17. The absent party filed an affidavit with the district court in that case. Id. BC could similarly have filed an affidavit with the district court or provided some notice that its interests would be impaired, but did not do so.

Nevertheless, VSC argues that BC has to be a party to the confirmation proceeding because BC's predecessor selected VSC as the sub-distributor, drafted the letter of intent, negotiated the contract, executed the contract, and terminated the contract. That argument is unavailing. To the extent VSC is arguing BC, through its predecessor, must be a party because it somehow acted

---

[14] The district court did not address the merits, nor do we here. But the record shows BIL's vigorous efforts to confirm the Award.

improperly, this court rejected that notion in Shearson. There, the court stated, "[t]he mere fact, however, that Party A, in a suit against Party B, intends to introduce evidence that will indicate that a non-party, C, behaved improperly does not, by itself, make C a necessary party."  877 F.2d at 136.

VSC falls back to Rule 19(a)(1)(B)(ii), arguing that it is at risk of facing inconsistent obligations unless BC is joined.

C.        Rule 19(a)(1)(B)(ii): Risk of Inconsistent Obligations

Disposition of this petition in BC's absence will not leave BIL or VSC subject to a substantial risk of double, multiple, or otherwise inconsistent obligations because of BC's absence. Fed. R. Civ. P. 19(a)(1)(B)(ii).

Misinterpreting "inconsistent obligations," VSC argues that it faces a substantial risk of incurring conflicting judgments because of the earlier-filed petition in Commonwealth court.  VSC ignores the distinction this circuit has drawn in the Rule 19 context between inconsistent obligations and inconsistent adjudications or results.  In Delgado v. Plaza Las Americas, Inc., 139 F.3d 1 (1st Cir. 1998) (per curiam), this court explained that "'[i]nconsistent obligations' are not . . . the same as inconsistent adjudications or results," because "[i]nconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident."  Id. at 3.  In contrast, inconsistent adjudications or

-22-

results occur when a party wins on a claim in one forum and loses on another claim from the same incident in another forum.  Id.; see Am. Ins. Co. v. St. Jude Med., Inc., 597 F. Supp. 2d 973, 978 (D. Minn. 2009).  The risk of inconsistent adjudications results from the fact that there are two proceedings, not from BC not being a party in the federal case.

Even if the federal proceeding and the Commonwealth proceeding produced different results, VSC would not be subject to different obligations because of BC's absence from this case.  The confirmation of an arbitration award finalizes the award and makes the award a judgment of the court.  6 J. Bourdeau & E. Mayer, C.J.S. Arbitration § 178; see Irving R. Boody & Co. v. Win Holdings Int'l, Inc., 213 F. Supp. 2d 378, 380 (S.D.N.Y. 2002) ("The confirmation of an arbitration award converts the final arbitration award into the judgment of the court.").[15]

Even so, the risk that there would be inconsistent results is low because of the deferential manner in which the FAA requires arbitral awards to be reviewed.[16]  "[R]eview of the

[15] The parties do not present arguments concerning the preclusive effect that the first proceeding to reach judgment would have on the other proceeding.

[16] Although it appears as if VSC may have argued unsuccessfully to the Commonwealth court that the FAA does not apply under the terms of the contract, it has not advanced any such argument in its briefing before this court even though BIL advances a number of arguments that depend on the FAA's applicability.  We assume the FAA would apply, and also note that our own case law requires that to use local arbitration rules instead of the FAA, the contract

-23-

arbitration award itself is 'extremely narrow and exceedingly deferential.'" Bangor Gas Co., LLC v. H.Q. Energy Servs. (U.S.), Inc., 695 F.3d 181, 186 (1st Cir. 2012)(quoting Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 330 (1st Cir. 2000)).

The Rule 19 inquiry may require "some preliminary assessment of the merits of certain claims." Republic of Philippines v. Pimentel, 553 U.S. 851, 869 (2008); see Picciotto, 512 F.3d at 14-15 (stating Rule 19 "requires the trial court to make pragmatic judgments and to 'decide whether considerations of efficiency and fairness, growing out of the particular circumstances of the case, require that a particular person be joined as a party'" (footnote omitted) (quoting Shearson, 877 F.2d at 134)); 7 C. Wright & A. Miller, Federal Practice & Procedure § 1608 ("[C]ourts must look to the practical likelihood of prejudice . . . ."). Taking into account that consideration, the risk of inconsistency may be theoretically possible, but is not a practical concern.

VSC's real argument is that at the second stage of the arbitration BC will be needed to give VSC monetary relief, if any is ordered. That may or may not be, but that argument is premature. There is and has been no second stage to the arbitration, nor any petition to review such a second stage.

_____

must say so unequivocally. See, e.g., PaineWebber Inc. v. Elahi, 87 F.3d 589, 593-94 (1st Cir. 1996).

Review of this stage of the arbitration does not require that BC be a party. There is diversity jurisdiction.

III.

Having found dismissal for want of jurisdiction to be in error, we would ordinarily reverse the district court's dismissal and remand for further proceedings. However, in this unusual case, we remand and order the court to stay further proceedings pending the outcome of the Commonwealth court proceedings. Considerations, including those of wise and sound judicial administration and comity, persuade us that a stay is warranted until the parallel case in the Commonwealth courts is concluded. See Cruz v. Melecio, 204 F.3d 14, 22 (1st Cir. 2000). Although neither party raised the possibility of deferring the exercise of federal jurisdiction, we may do so sua sponte. Rivera-Feliciano v. Acevedo-Vilá, 438 F.3d 50, 59 (1st Cir. 2006); see Jiménez v. Rodríguez-Pagán, 597 F.3d 18, 27 n.4 (1st Cir. 2010); Cruz, 204 F.3d at 22 n.7.

Parallel litigation is not uncommon in our federal system and "[i]t has long been established that the presence of parallel litigation in state court will not in and of itself merit [a stay] in federal court." Jiménez, 597 F.3d at 27 (citing McClellan v. Carland, 217 U.S. 268, 282 (1910)). However, federal courts appropriately consider "a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 11

-25-

n.9 (1987). In some circumstances, the doctrine of comity, which is designed to avoid "unseemly conflict between two sovereignties," warrants a stay. Cruz, 204 F.3d at 23 (quoting Glen Oaks Utils., Inc. v. City of Houston, 280 F.3d 330, 334 (5th Cir. 1960)) (internal quotation marks omitted); see Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 733 (1996) (Kennedy, J., concurring) (stating that "obligations of comity" are "an important part of the justification and authority" to defer the exercise of federal jurisdiction). In other circumstances, "considerations of 'wise judicial administration'" may warrant a stay as well. Cruz, 204 F.3d at 23 (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 818 (1976)). Here there is more than simple parallel litigation. Rather, the two considerations of comity and wise judicial administration together counsel a stay. The Commonwealth proceeding involves the same legal issues as the federal one, includes all parties to the arbitration, has already been decided by the initial reviewing court, and is now on appeal. In addition, the Commonwealth proceeding was filed first, this federal proceeding was filed about a month later, and we have some concern that BIL has engaged in forum-shopping.

Whether or not this case fits within the formal strictures of Colorado River or other formal categories of staying

the exercise of federal jurisdiction,[17] a stay is appropriate. See Cruz, 204 F.3d at 23 (stay appropriate even where case "arguably does not fit into any of the established doctrinal boxes"); see also Pennzoil, 481 U.S. at 12 n.9 (explaining that doctrines of withholding the exercise of federal jurisdiction "are not rigid pigeonholes into which federal courts must try to fit cases"). A line of cases in our circuit involving parallel state and federal actions, which includes Currie v. Group Insurance Commission, 290 F.3d 1 (1st Cir. 2002), Rivera-Feliciano v. Acevedo-Vilá, 438 F.3d 50, and Jiménez v. Rodríguez-Pagán, 597 F.3d 18, support the result we reach.

In Jiménez, this court recognized that when non-diverse parties are absent from the federal litigation, but are part of the advanced state litigation, as BC is in this case, the desirability of avoiding piecemeal litigation favors staying the federal

---

[17] The stay here would most comfortably fit into the Colorado River doctrine, where the Supreme Court held that when state and federal courts are exercising concurrent jurisdiction contemporaneously it may be appropriate in some instances for the federal court to defer to the state court. See Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976); Currie v. Grp. Ins. Comm'n, 290 F.3d 1, 9 (1st Cir. 2002). We have previously found at least eight non-exhaustive factors that are considered under that doctrine: (1) whether any court has jurisdiction over a res; (2) the geographical inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal or state law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction. Jiménez v. Rodríguez-Pagán, 597 F.3d 18, 27-28 (1st Cir. 2010); Currie, 290 F.3d at 10.

proceeding.  597 F.3d at 29-30; see also Rivera-Feliciano, 438 F.3d at 62 (better to avoid piecemeal litigation and allow Puerto Rico courts to decide controlling issues of Puerto Rico law).  There, we stated that "[t]his disparity in inclusiveness thus creates a greater practical risk of piecemeal litigation than the baseline inefficiencies of the average exercise of concurrent federal-state jurisdiction," because the state court action could comprehensively adjudicate the claims.  Jiménez, 597 F.3d at 30.  In this matter, the claims before both courts are the same and arise from the exact same arbitration.  In the Puerto Rico matter, BC is a party and in the federal case it is not.  As in Jiménez, the state court proceeding can completely dispose of the matter.  In Jiménez, we favored a stay where the federal case "foundered on jurisdictional questions" and the Commonwealth action was "already well into the discovery stage."  Id. at 31.

"Here the doctrine of sound judicial administration" that underlies decisions to defer to state courts "has even more force because the state proceeding is already on appeal on a fully developed record."[18]  Currie, 290 F.3d at 11 n.8; cf. In re President & Fellows of Harvard Coll., 149 F.2d 69, 72-73 (1st Cir.

_____

[18] We were informed at oral argument that technically VSC has only petitioned the appeals court for review because there is no appeal as of right from the lower court confirmation of the Award. For simplicity, and because the distinction makes no difference in this case, we have referred to the appellate proceedings as an appeal.

-28-

1945) (holding stay improper absent a state court judgment, but suggesting that an opposite decision would result if a state court judgment had been rendered and was pending on appeal in the state system). Indeed, the Seventh Circuit has also held that in some instances it is appropriate to stay a federal proceeding pending the outcome of the appeal in a parallel state court proceeding. See Hearne v. Bd. of Educ., 185 F.3d 770, 778 (7th Cir. 1999) (finding a stay appropriate where fired teacher appealed an administrative decision to terminate the teacher to a state appeals court and also filed a federal action); Rogers v. Desiderio, 58 F.3d 299, 302 (7th Cir. 1995). In a case involving claim splitting, the Seventh Circuit decided that when plaintiffs' earlier-filed state court action was already on appeal, "[i]t is sensible to stay [federal] proceedings until [the state case] has reached a conclusion" on appeal, and that under these circumstances a federal judge "need not barge ahead on the off-chance of beating the state court to a conclusion." Rogers, 58 F.3d at 302; accord Glen Oaks, 280 F.2d at 334 (reasoning that doctrine of comity required a stay and stating that "[s]ince an appeal was pending from the state court judgment . . . it was proper that the proceedings in the federal court be stayed until the final termination of the proceedings in the state court," and that "it would have been error if the district court had not stayed its hand").

Another consideration, discouragement of forum-shopping, also favors a stay. In Cruz v. Melecio, 204 F.3d 14, we stated that we could consider "the discomforting specter of forum-shopping" in the "decisional calculus" to enter a stay order. Id. at 24. For obvious reasons, that is a concern here.

At oral argument BIL argued that a stay should not be granted because the Puerto Rico courts are not adequate: they are slow and BIL may not receive a prompt decision in VSC's appeal from the order entered in BIL's favor. BIL also asserted that there is a risk that the Puerto Rico courts will incorrectly apply Puerto Rico law, rather than the FAA, in reviewing the Award, which, according to BIL, offers less deferential review than the FAA.

In other contexts this circuit has rejected the notion that Puerto Rico courts offer an inadequate forum. See Coors Brewing Co. v. Méndez-Torres, 678 F.3d 15, 28-30 (1st Cir. 2012); see generally Pleasures of San Patricio, Inc. v. Méndez-Torres, 596 F.3d 1 (1st Cir. 2010).

As to the risk that the Puerto Rico courts would apply what BIL argues is the incorrect substantive law, the Court of First Instance in fact found the FAA to govern, which is BIL's position, so we do not see what the prejudice is. Further, if Puerto Rico's Supreme Court were to find the FAA inapplicable, BIL could seek further review in the U.S. Supreme Court. See Coors

Brewing, 678 F.3d at 29-30.  Additionally, concern that a party will lose its case does not demonstrate the inadequacy of a forum. Id. at 29 (party "could not demonstrate the inadequacy of the Puerto Rico courts merely by predicting that they would lose their case" (citing San Patricio, 596 F.3d at 9)).

In situations involving parallel state court litigation where deferring the exercise of jurisdiction is proper, this circuit has historically ordered a stay rather than a dismissal. Jiménez, 597 F.3d at 32.  Accordingly, we instruct the district court to stay these proceedings pending final disposition of the appellate process in the Puerto Rico courts.

IV.

Given our resolution of this appeal, we need not address a number of arguments raised on appeal, including whether Rule 19 is preempted by the FAA, whether the district court engaged in "constructive" abstention through Rule 19, or whether the Award should be confirmed or vacated.

The district court's order dismissing the case under Fed. R. Civ. P. 12(b)(1) is reversed and the case is remanded.  The district court shall proceed in a manner consistent with this opinion.  So ordered.  No costs are awarded.