**PUERTO RICO MEDICAL
EMERGENCY GROUP,
INC., Plaintiff,**

v.

**IGLESIA EPISCOPAL PUER-
TORRIQUEÑA, INC., et
al., Defendants.**

**Civil No. 14–1616 (FAB)**

United States District Court,
D. Puerto Rico.

San Juan, Puerto Rico, July 26, 2017

Raul S. Mariani–Franco, Mariani Franco Law Office, Guillermo J. Ramos–Luina, San Juan, PR, for Plaintiff.

Lee Sepulvado–Ramos Hato Rey, PR, Anibal J. Nunez–Gonzalez, Jose F. Escobar–Machin Sepulvado & Maldonado, PSC, Jose A. Andreu–Garcia, Andreu & Sagardia Law Office Sepulvado & Maldonado PSC, Albeniz Couret–Fuentes, San Juan, PR, for Defendant.

## OPINION AND ORDER [1]

BESOSA, District Judge.

Before the Court is defendants' joint motion to dismiss for failure to join an indispensable party pursuant to Federal Rule of Civil Procedure 12(b)(7) ("Rule 12(b)(7)"). (Docket Nos. 146; 192; 193.) For the reasons set forth below, the Court **DENIES** defendants' motion, and **GRANTS** Puerto Rico Medical Emergency Group, Inc. ("PRMEG") leave to file a third amended complaint to join Saint Lukes Memorial Hospital, Inc.

## I. PROCEDURAL BACKGROUND

The Court will set forth only the relevant background for purposes of the Rule 12(b)(7) motion. See Docket Nos. 50 and 11. On August 11, 2014, PREMG filed a complaint against Iglesia Episcopal Puertorriqueña, Inc. ("IEP"), Hospital Episcopal San Lucas, Inc. ("HESL Inc."), Servicios Generales Episcopales, Inc. ("SGE"), and Servicios de Salud Episcopales ("SSE"), (collectively, "defendants"). (Docket No. 1.) The complaint alleged violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. section 1961 et seq., ("RICO") and raised several state law claims. Id. After a year of litigation, PRMEG filed a second amended complaint on September 22, 2015.[2] (Docket No. 69.) Defendants' subsequent motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) was denied. Puerto Rico Emergency Group, Inc. v. Iglesia Episcopal Puertorriqueña, Inc., No. 14-1616, 257 F.Supp.3d 225, 2017 WL 2859764 (D.P.R. July 5, 2017) (Besosa, J.)

---

1. Ian Joyce, a second-year student at Vanderbilt University Law School, and Natalia Vilá–Palacios, a second-year student at the University of Puerto Rico School of Law, assisted in the preparation of this Memorandum and Order.

2. PRMEG had filed an amended complaint just three months after commencing this litigation. (Docket No. 19.)

Defendants then moved to dismiss pursuant to Rule 12(b)(7) for failure to join an indispensable party. (Docket No. 146.) PRMEG opposed, defendants replied, and PRMEG responded. (Docket Nos. 156, 159, 162.) The Court denied the Rule 12(b)(7) motion without prejudice and ordered the parties to show cause as to whether the indispensable party was not already joined. (Docket No. 192.) Both parties filed motions in compliance with the order to show cause. (Docket Nos. 193, 194.)

## II. THE SHOW CAUSE ORDER

"Saint Lukes Memorial Hospital, Inc." ("Saint Lukes"), routinely does business as "Hospital Episcopal San Lucas" in addition to other related names. (Docket Nos. 146 at p. 4; 146–3 at pp. 81–92.); see Maldonado-Rodriguez v. Saint Luke's Memorial Hospital, Inc., 940 F.Supp.2d 30, 32 (D.P.R. 2013) (Perez-Gimenez, J.) ("[plaintiffs] filed the above captioned claim against defendants St. Luke's Memorial Hospital, Inc., d/b/a Hospital Episcopal San Lucas ('HESL' or 'the Hospital' or 'the Defendant.'")). In 2000, Saint Lukes purchased Ponce Regional Hospital from the Commonwealth of Puerto Rico—commonly referred to as "Hospital Episcopal San Lucas II." (Docket No. 146 at p. 4.)

An additional entity, however, is also named Hospital Episcopal San Lucas. "Hospital Episcopal San Lucas Inc.," ("HESL Inc.") is a non-profit organization that was initially designed to operate a separate acute-care hospice facility in Ponce ("Hospital Episcopal San Lucas I.")[3] (Docket No. 146 at p. 3.) HESL Inc. has not operated "at all times relevant to the complaint," but continues to exist as a legal entity. (Docket Nos. 146–3 at p. 3; 194–3 at pp. 2 and 13.)

**3.** In 2000, HESL Inc. entered into a contract with Saint Lukes to manage Hospital Episcopal San Lucas II. (Docket No. 146–2 at p. 6.) In January 2007, Saint Lukes terminated the contract and assumed control of management. Id. Subsequently, the majority of HESL Inc.'s assets were liquidated. (Docket Nos. 146–2.)

**4.** "COMES NOW Iglesia Episcopal Puertorriqueña, Inc. ("IEP"), **Hospital Episcopal San Lucas,**

HESL Inc. and Saint Lukes are part of defendant IEP's health care services network, and defendant SSE (which is the management consultant for all entities in IEP's healthcare services network) is the sole corporate member of both. (Docket Nos. 146–2 at pp. 6–7; 194–3 at p. 1.)

On September 25, 2007 PRMEG entered into a professional services contract ("PS Contract") with an institution identified as "Hospital Episcopal San Lucas" to operate Hospital Episcopal San Lucas II's emergency department. (Docket Nos. 69 at p. 8; 146–3 at p. 103.) The PS contract does not once refer to Saint Lukes. Defendants have provided the Court with sufficient evidence, however, showing that the "Hospital Episcopal San Lucas" in the PS Contract was Saint Lukes, not the inactive non-profit organization HESL Inc. See, e.g., Docket No. 146–3 at p. 2–3 (Julio Ruiz Declaration under penalty of perjury) ("Saint Lukes used its commercial name 'Hospital Episcopal San Lucas' when it executed the professional services contract with [PRMEG]."); Id. at pp. 122–126 (exhibit containing checks sent from Saint Lukes to PRMEG pursuant to the PS Contract).

At the commencement of this litigation, PRMEG served process on an entity by the name of "Hospital Episcopal San Lucas **Inc.**" (Docket No. 8) (emphasis added). Hospital Episcopal San Lucas Inc. was served process at the same location as SSE and retains the same counsel. (Docket Nos. 3 and 8.)

Early in this litigation, defendants appeared to admit that PRMEG served notice on the entity that entered into the PS Contract with PRMEG.[4] (Docket No. 83); see also, Docket No. 192 at p. 5–6. Despite this apparent admission, on January 5, 2017—over two years and four months after the start of this litigation—defendants filed the Rule 12(b)(7) motion, alleging that defendant

Inc. ("HESL"), Services de Salud Episcopales, Inc. ("SSE") and Servicios Generales Episcopales, Inc. ("SGE") (collectively "Defendants") [...] 4.18: Allegations contained on [sic] paragraph 4.18 of the Second Amended Complaint are **admitted to the extent that HESL and PRMEG entered into an agreement on September 25, 2007 ...**," (Docket No. 192 at p. 5–6.) (emphasis added).

"Hospital Episcopal San Lucas Inc." was in fact HESL Inc., and not the party that entered into the PS Contract. (Docket No. 146, at p. 4.)

Despite the corporate name listed on the service of process, it appeared that Saint Lukes was potentially defendant "Hospital Episcopal San Lucas Inc.," which had been served with process. Indeed, Saint Lukes routinely operates under the name "Hospital Episcopal San Lucas," defendants seemingly admitted that the party which had been served with process was Saint Lukes, defendants' averred that HESL Inc. "has never operated," and Saint Lukes is intertwined with IEP, SSE and SGE. (Docket Nos. 83; 146 at pp. 3 and 4; 146–3 at p. 53.) Because of the ambiguity stemming from the use of identical names for multiple entities, the Court required the parties to show cause as to why Saint Lukes was not already a party to this litigation.[5] (Docket No. 192.) The parties complied. (Docket Nos. 193; 194 through 194–6.) The Court now addresses the 12(b)(7) motion.

### III. FACTUAL ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

On September 25, 2007, PRMEG entered into the PS Contract with Saint Lukes pursuant to which PRMEG would manage and provide medical coverage for the Hospital Episcopal San Lucas II emergency room.[6] (Docket No. 69 at p. 8.) Allegedly, the PS contract permitted PRMEG to bill insurance companies directly for the services PRMEG provided, and required Saint Lukes to notify the insurance companies with which it did business that PRMEG retained the right to bill. Id. at pp. 10–11. PRMEG never agreed to amend the contract, nor did it authorize Saint Lukes to bill for PRMEG's services. Id. at pp. 9–10.

After adopting the PS contract, PRMEG alleges that defendant SSE entered into agreements with insurance companies, specifically "Medical Card System Corporation," "MAPFRE," "Triple C," and "Panamerican Life Insurance Co.," in which the insurance providers agreed to pay SSE and Saint Lukes directly for services rendered by PRMEG. (Docket No. 69 at pp. 12–17.) PRMEG alleges that defendants and Saint Lukes billed the insurance companies by sending thousands of invoices, through the mail or electronically, from 2007 through 2014, and received numerous payments in return. (Docket Nos. 69 at pp. 32–33; 69–1 through 69–6.)

PRMEG concurrently billed the insurance companies for the same services. (Docket No. 69 at p. 28.) PRMEG alleges that defendants knew that PRMEG billed the same insurers for the same services, but failed to notify PRMEG regarding the double billing practices. Id.

### IV. RULE 12(b)(7) STANDARD

Federal Rule of Civil Procedure 19 outlines a three-step approach to determine whether an action should be dismissed pursuant to Rule 12(b)(7) for failure to join a required party. Fed. R. Civ. P. 19. First, the Court determines whether the absent entity is a "required party" to the action. Fed. R. Civ. P. 19(a)(1). If the entity is required, then the Court ascertains whether joinder is feasible. Id. Finally, if the party is required and joinder is not feasible, then the Court must "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

---

5. The Court notes that PRMEG never argued, outside of a statement in a discovery motion, that HESL Inc. was Saint Lukes. In fact, PRMEG made several statements to the contrary. See, e.g., Docket No. 192 at p. 7.

6. The Court recites the factual allegations in the second amended complaint because they are critical to the Rule 12(b)(7) analysis. The Court substitutes "Saint Lukes" when PRMEG uses "HESL" and related names. The Court is aware that PRMEG may have intended to make certain allegations towards HESL Inc. instead of Saint Lukes, and notes that the Court's rendition of the facts is in no way binding on PRMEG's prerogative to amend the complaint. The Rule 12(b)(7) analysis, however, is based on the PS Contract's connection to the RICO and Puerto Rico law claims. Because the Court is satisfied that Saint Lukes is a party to that contract, any discrepancy involving the use of "HESL" for "Saint Lukes" is immaterial.

■ Rule 19 "calls for courts to make pragmatic, practical judgments that are heavily influenced by the facts of each case." Bacardi Int'l. Ltd. v. V. Suarez & Co., 719 F.3d 1, 9 (1st Cir. 2013). Courts "should keep in mind the policies that underlie Rule 19, 'including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them.'" Picciotto v. Cont'l. Cas. Co., 512 F.3d 9, 15–16 (1st Cir. 2008) (citing Acton Co. v. Bachman Foods, Inc., 668 F.2d 76, 78 (1st Cir. 1982)).

## V. DISCUSSION

### A. Indispensable Party

■ Defendants argue that the entirety of PRMEG's cause of action is premised on the PS Contract, making Saint Lukes an indispensable party.[7] (Docket No. 146 at p. 22–25.)

Rule 19(a)(1) sets forth three tests, any one of which, if satisfied, results in a finding of indispensability. Maldonado–Viñas v. National Western Life Ins., Co., 303 F.R.D. 177, 180 (D.P.R. 2014) (Besosa, J.). A party is deemed necessary to the litigation if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

■ All of PRMEG's claims, including the RICO violation, stem from the PS Contract into which it entered with Saint Lukes. Generally, "in breach of contract actions, all parties to the contract are necessary ones." Rivera Rojas v. Loewen Group Intern., Inc., 178 F.R.D. 356, 361 (D.P.R. 1998) (Laffitte, J.) (citing Acton Co., Inc. of Mass. v. Bachman Foods, Inc., 668 F.2d 76, 78–79 (1st Cir. 1982)). This general rule extends to subsidiaries, "if the subsidiary entered into contracts which are at the core of the controversy." Rivera Rojas, 178 F.R.D. at 361 (citations omitted).

PRMEG requests trebled economic and compensatory damages, and attorneys' fees. (Docket No. 69 at p. 47.) PRMEG's complaint hinges on a multitude of alleged contractual violations committed by Saint Lukes. See, e.g., Docket No. 69 at p. 40 ("The estimated costs of the additional services provided by PRMEG that were never compensated by [Saint Lukes] is conservatively estimated in an amount not less than $1,200,000.00.") If PRMEG ultimately prevails in this case, liability will rest with defendants pursuant to a contract entered into by Saint Lukes and PREMG. This alone merits a finding that Saint Lukes is an indispensable party pursuant to Rule 19(a)(1)(A). See E.E.O.C. v. Peabody Western Coal Co., 610 F.3d 1070, 1082 (9th Cir. 2010) (finding a third party indispensable when the third party was largely responsible for the named defendant's contract breach, because without the third party "[the defendant] will not be able to seek indemnification from the [third party].")[8]

---

**7.** PRMEG counters that, at most, Saint Lukes is a dispensable joint tortfeasor. (Docket No. 156 at p.5.) While PRMEG correctly notes that in tort actions, "[i]t has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." Alejandro–Ortiz v. Puerto Rico Elec. Power Authority, 872 F.Supp.2d 133, 139 (D.P.R. 2012)(Besosa J.)(citations omitted). PRMEG provides no argument, however, as to why this tort doctrine applies to an alleged RICO conspiracy and a Puerto Rico law breach of contract action. Indeed, PRMEG fails to develop this argument, merely providing a string of case citations supplemented by a conclusory statement averring that Saint Lukes is a joint tortfeasor. (Docket No. 156 at p. 5–6.) PRMEG cannot "mention a possible argument in the most skeletal way, leaving the Court to do counsel's work, create the ossature for the argument, and put flesh on its bones." U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

**8.** Additionally, PRMEG has neither argued that the Court should pierce the corporate veil, nor provided evidence to overcome the presumption of corporate separateness. See Escude Cruz v.

Furthermore, as a party to the PS contract, Saint Lukes has an interest in the litigation. See Rivera Rojas, 178 F.R.D. at 362 ("If the Court is to rule on how these contracts [. . .] are to be performed or enforced, [signatory to the contract] Camposanto has an interest in this litigation."). Saint Lukes cannot fully protect its interest in this litigation. A finding that defendants breached the PS Contract in this case could potentially prejudice Saint Lukes in future litigation. See Acton Co., Inc. of Massachusetts v. Bachman Foods, Inc., 668 F.2d 76, 78 (1st Cir. 1982) ("Even if Acton would not be legally bound, an adverse ruling would be a persuasive precedent in a subsequent proceeding, and would weaken Acton's bargaining position [. . .] to proceed without Action might 'as a practical matter impair or impede' [Action's interest]."). Saint Lukes, thus, is an indispensable party pursuant to Rule 19(a)(1)(B)(i). See Fed R. Civ. P. 19(a)(1)(B)(i).

**B. Judicial Admission**

▮ PREMG contends that because defendants admitted that "Hospital Episcopal San Lucas Inc.," a named defendant, is a signatory to the PS Contract, defendants waived any argument to the contrary. (Docket No. 156 at p. 3.) Defendants counter that their admission was not "clear" due to the ambiguity in PRMEG's complaint and because the "HESL" defendants referenced in the answer was the "HESL" in the PS Contract, or rather Saint Lukes.[9] (Docket No. 159 at pp. 2–9.)

Ortho Pharmaceutical Corp., 619 F.2d 902, 905 (1st Cir. 1980) (finding that in Puerto Rico a party must show the parent corporation has a "degree of control over the subsidiary as to render the latter a mere shell for the former" in order to pierce the corporate veil).

9. In the answer, defendants explicitly state that they will refer to "Hospital Episcopal San Lucas, Inc." as the party served with process by reference to the acronym "HESL." See, Docket No. 83. The Court will not allow litigation that is misleading and designed to prolong the disposition of this case to continue, and under different circumstances may have invoked judicial estoppel. See Alternative System Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004) ("[C]ourts typically invoke judicial estoppel when

▮ Generally, a pleading that admits an allegation is binding. Harrington v. City of Nashua, 610 F.3d 24, 31 (1st Cir. 2010); AES Puerto Rico, L.P. v. Trujillo–Panisse, 133 F.Supp.3d 409, 427 (D.P.R. 2015) (Besosa, J.) There are, of course, limits to what a party can admit. Harrington, 610 F.3d at 31. Importantly, in order to be binding, an admission must be clear and unequivocal. See id. If there is any doubt, pleadings must be "construed so as to do justice." Fed. R. Civ. P. 8(e); JJ Water Works, Inc. v. San Juan Towing and Marine Services, Inc., 59 F.Supp.3d 380, 392 at n.10 (D.P.R. 2014) (McGiverin, J.)

In light of the show cause order, the Court can authoritatively analyze the defendant's answer. There are two possible interpretations of the relevant admissions: either defendants admitted that "Hospital Episcopal San Lucas Inc.," which was served with process, is a party to the PS Contract; or that a party (Saint Lukes) doing business as "Hospital Episcopal San Lucas," but identified as "HESL," is a party to the PS contract. The Court need not speculate as to which interpretation is correct. Because there are two reasonable interpretations of defendants' admissions, the answer does not a waive joinder of an indispensable party.[10] See Harrington, 610 F.3d at 31 (determining that a judicial admission that could be read in two different ways is not "clear" enough to bind a party).

▮ Moreover, PRMEG cites no case in which a party waived joinder of a required party.[11] The Court is doubtful, and no prece-

a litigant is playing fast and loose with the courts.") (citations omitted).

10. The Court, nevertheless, finds that defendants' argument that their own admission was not clear because PRMEG "muddied the waters" is unpersuasive. If defendants were truly confused as to the allegations in the complaint, they could have moved for a more definite statement. Fed. R. Civ. P. 12(e). Defendants were under no obligation to admit that "HESL" was a party to the PS Contract.

11. PRMEG cited only to precedent generally pertaining to judicial admissions, not to wavier of an indispensable party. See e.g., Harrington v. City of Nashua, 610 F.3d 24 (1st Cir. 2010) (interpreting a police officer's admission regarding the

dent suggests otherwise, that even a misleading admission could "waive" or estop a required party from being joined to an action. Rule 19 provides that an indispensable party "must" be joined. Fed. R. Civ. P. 19(a)(1). This language precludes waiver of an indispensable party, particularly when the opposing party does not challenge the necessity of joinder.[12]

### C. Dismissal

■ Defendants contend that because PRMEG knew for months that Saint Lukes is a necessary party, this case should be dismissed as a sanction. (Docket No. 146 at p. 25.) PRMEG counters that the proper remedy is joinder of Saint Lukes, not dismissal. (Docket No. 156 at p. 6.)

■ The Rule 19 analysis does not contemplate dismissal as a sanction, but rather as an equitable remedy when joinder of the indispensable party is not possible. Fed. R. Civ. P. 19(b). Accordingly, courts must only consider dismissal pursuant to Rule 19 when joinder of the indispensable party is not feasible. Bacardi Intern. Ltd., 719 F.3d at 9. Defendants have not argued that joinder of

Saint Lukes is not feasible. Because joinder of Saint Luke is feasible, the Court **DENIES** defendants' motion to dismiss for failure to join an indispensable party.

## VI. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss for failure to join an indispensable party is **DENIED**. (Docket No. 146.) The Court **GRANTS** PRMEG leave to amend the complaint to name Saint Lukes as a party. The third amended complaint shall be filed **no later than August 4, 2017.** (Docket No. 69.) Defendants' joint motion for summary judgement is **MOOT**. (Docket No. 177.)

**IT IS SO ORDERED.**

---

timing of a search); Accord, White v. ARCO/Polymers, 720 F.2d 1391 (5th Cir. 1983) (plaintiff admitted he did not work for a requisite time period to merit Union representation); Ferguson v. Neighborhood Hous. Servs. of Cleveland, Inc., 780 F.2d 549 (6th Cir. 1986) (Neighborhood Housing Service admitted it was an employer as defined by the Fair Labor Standards Act); In re Cendant Corp. Sec. Litig., 109 F.Supp.2d 225 (D.N.J. 2000) (interpreting a judicial admission as evidence of scienter); Greenwell v. Boatwright, 184 F.3d 492 (6th Cir. 1999) (plaintiffs argued that expert witness testimony controverted defendant's admissions); Wiget v. Becker, 84 F.2d 706 (8th Cir. 1936) (evaluating a judicial admission by counsel regarding computation of stock prices); United States v. Four Unites all-Terrain Vehicles, 778 F.Supp.2d 220

(D.P.R. 2011) (Besosa, J.) (evaluating a factual stipulation that ATV's are manufactured "primarily for off-road use.").

12. In its motion to show cause, PRMEG argued that "Saint Lukes can be deemed to be a joined party" under the rarely used "Misnomer Doctrine." (Docket No. 193 at p. 1.) The Court does not issue show cause orders to provide a second bite at the apple. See Morris v. Colvin, Case No. 2:14-cv-00447-LDG-NJK, 2015 WL 5723110 at *6 n.2 (D.Nev. 2015) ("The Court did not issue the orders to show cause so that [plaintiff] could raise new arguments on the merits.") The misnomer argument was not included in either PRMEG's opposition to dismissal or its surreply. Consequently, this argument is waived.