# United States Court of Appeals
## For the First Circuit

No. 20-1942

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,

Plaintiff, Appellee,

v.

KATHERINE FLANDERS-BORDEN,

Defendant, Appellant,

WILLIAM J. SHERRY; DAVID E. FLANDERS; KARYN S. BEEDY; BRETT L. PETERSON,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Lynch and Kayatta, Circuit Judges,
and Laplante,* District Judge.

Scott E. Adams for appellant.
Nellie E. Hestin, with whom McGuireWoods LLP was on brief, for appellee Merrill Lynch, Pierce, Fenner & Smith, Inc.
Hilary S. Schultz, with whom Shultz Law, LLP was on brief, for appellees William J. Sherry, David E. Flanders, Karyn S. Beedy, and Brett L. Peterson.

---

* Of the District of New Hampshire, sitting by designation.

August 26, 2021

**KAYATTA**, **Circuit Judge**.    This appeal concerns the validity of a Transfer on Death Agreement ("TOD Agreement") executed by Alton L. Flanders, III.    The TOD Agreement relates to an account containing a subset of Flanders's assets for which Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") acts as custodian.    If valid, the TOD Agreement avoids probate of an at-death transfer of the account assets to five designated beneficiaries, as follows:    20% to Flanders's daughter Katherine Flanders-Borden ("Borden"), 20% to Flanders's brother David Flanders ("David"), and 40%, 10%, and 10%, respectively, to three of Flanders's friends -- William Sherry, Karyn Beedy, and Brett Peterson.    After Flanders died intestate, David, Sherry, Beedy, and Peterson (the "consenting beneficiaries") consented to the distribution of the account assets per the terms of the TOD Agreement.    Borden, however, claimed that Flanders lacked the mental capacity to enter into the TOD Agreement and that all of the assets distributed by the agreement should therefore revert to his estate, of which she is the sole executor and heir.

To resolve the dispute about how the TOD Agreement assets should be distributed, Merrill Lynch commenced this interpleader action, joining Borden and the four consenting beneficiaries as interpleader defendants.    Without opposition from any party, Merrill Lynch moved for and obtained a discharge of any and all liability arising from the dispute.    The district court

- 3 -

subsequently granted summary judgment to the consenting beneficiaries, holding that no reasonable jury could find on the summary judgment record that Borden had met her burden of showing Flanders lacked capacity at the time he entered into the TOD Agreement. After the district court denied Borden's motion for reconsideration, she timely filed this appeal. For the following reasons, we affirm.

## I.

Borden presents three claims of error on appeal: (1) Flanders's estate should have been joined in this action; (2) the district court applied the wrong state's law in deciding the motion for summary judgment; and (3) the district court erred in granting summary judgment to the consenting beneficiaries.[1] We consider each claim in turn, supplying background facts as necessary along the way.

## A.

We begin with Borden's contention that Flanders's estate is a required party under Rule 19 of the Federal Rules of Civil Procedure and that remand is therefore required to allow the joinder of the estate. We normally review Rule 19(a) determinations for abuse of discretion. See Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 14-15 (1st Cir. 2008). Here, however, the

---

[1] At oral argument, Borden expressly waived the challenge made in her opening brief to Merrill Lynch's discharge.

issue of whether the estate is a required party was never raised below, and so there is no determination to review. Appellees therefore urge us to consider this claim waived.

It hardly bears repeating that as a general matter, "arguments not raised in the district court cannot be raised for the first time on appeal." Sierra Club v. Wagner, 555 F.3d 21, 26 (1st Cir. 2009). Application of that general principle, however, is not necessarily straightforward in the context of Rule 19, see generally 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1609 (3d ed. 2021), and it appears that our circuit has not yet decided whether a claim that a required party has not been joined is waived by failing to raise it in the district court. We need not resolve the issue of waiver, however, because even assuming Borden's Rule 19 argument was not waived in the district court, it is clear that Flanders's estate is not a required party.

Rule 19 is geared toward circumstances "where a lawsuit is proceeding without a party whose interests are central to the suit." Bacardi Int'l Ltd. v. V. Suárez & Co., 719 F.3d 1, 9 (1st Cir. 2013). Under the rule, such a party must be joined when feasible. Fed. R. Civ. P. 19(a). When joinder is not possible, the court must determine whether the action should proceed among the existing parties or be dismissed. Fed. R. Civ. P. 19(b). We have emphasized that Rule 19 "calls for courts to make pragmatic,

practical judgments that are heavily influenced by the facts of each case." Bacardi, 719 F.3d at 9; see also Pujol v. Shearson/Am. Express, Inc., 877 F.2d 132, 134 (1st Cir. 1989) (Breyer, J.) (explaining that Rule 19(a) requires courts to "decide whether considerations of efficiency and fairness, growing out of the particular circumstances of the case, require that a particular person be joined as a party").

A person is a "required party" who must be joined under Rule 19(a) if "in that person's absence, the court cannot accord complete relief among existing parties" or if

> that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A)-(B). Flanders's estate satisfies none of these criteria.

First, even in the estate's absence, the court could (and did) accord complete relief among the existing parties: Merrill Lynch, as interpleader plaintiff, was discharged of liability arising from the interpleader action and the underlying dispute, and the court determined the rights under the

- 6 -

TOD agreement of all five beneficiaries, each of whom was joined as an interpleader defendant. Aside from baldly asserting that "[a]bsent joinder of the estate, complete relief cannot be granted," Borden develops no argument to the contrary.

Second, even assuming the estate can claim an interest in the outcome of this dispute despite the fact that it is an outsider to the TOD Agreement, proceeding in the estate's absence did not "as a practical matter impair or impede" its ability to protect that interest. Fed. R. Civ. P. 19(a)(1)(B)(i). We have explained that where the interests of an absent party are aligned closely enough with the interests of an existing party, and where the existing party pursues those interests in the course of the litigation, the absent party is not required under Rule 19. See Bacardi, 719 F.3d at 10-12; see also Shearson, 877 F.2d at 135-36; Fed. Ins. Co. v. Singing River Health Sys., 850 F.3d 187, 201 (5th Cir. 2017). The interests of the absent and existing parties need not be "virtually identical." Bacardi, 719 F.3d at 11.

Throughout this dispute, Borden has argued that the TOD Agreement is voidable on the basis that Flanders lacked capacity to enter into it. As Borden acknowledges, that is precisely the position she would expect the estate to take were it too a party, because the TOD account assets would revert to the estate if the TOD agreement were voidable. See id. at 10-12; Shearson, 877 F.2d

at 135-36.  The interests of Borden and the estate are therefore identical -- or very nearly so.

In her reply brief, Borden makes a belated attempt to identify interests that the estate could not protect due to its absence:  "unreleased estate tax liens" on the TOD account assets and an alleged failure on the part of Merrill Lynch to receive an "estate tax waiver" as required by the TOD Agreement.  Borden failed to raise these arguments in her opening appellate brief, and she failed to develop the factual foundation for either argument:  She provided no evidence that the estate is subject to any estate tax liens or, as required by the TOD Agreement, that an estate tax waiver is required in Massachusetts.  We therefore deem these arguments waived on appeal.  See United States v. Casey, 825 F.3d 1, 12 (1st Cir. 2016) (deeming arguments raised for first time in reply brief waived); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[W]e see no reason to abandon the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

It is of no help to Borden that she was joined in her individual capacity, rather than in her capacity as executor of the estate.  Even as "just" an individual, her only interest in this lawsuit is in advocating for an outcome that redirects the assets to the estate and ultimately to her as sole heir.  In

pragmatic terms, for purposes of this litigation, Borden and the estate are one: Borden possessed in equal measure every interest that the estate has in the outcome of this lawsuit, and with no conflicting interest. Moreover, as an active participant in the litigation, Borden was aware of the estate's potential interest in its outcome and was capable, as executor, of asserting that interest through a motion to intervene. The fact that Borden was "well aware of this situation," yet "never moved to intervene" on behalf of the estate, indicates that she did not deem the estate's "interests substantially threatened by the litigation." United States v. San Juan Bay Marina, 239 F.3d 400, 406-07 (1st Cir. 2001); see also Singing River Health Sys., 850 F.3d at 201. Even under our assumption that Borden's Rule 19 claim is not waived, it would be inequitable to allow Borden to sit on her hands throughout years of litigation only to now assert the estate's interest. See Wright & Miller, supra, § 1609 (explaining that Rule 19 "is based on equitable principles"); Provident Tradesmens Bank & Tr. Co., 390 U.S. at 120-21 (noting the equitable origins of joinder jurisprudence).

Borden also argues that joinder is required because the estate's absence leaves "an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii). This is because, according to Borden, the estate may attempt to "re-litigat[e]

competency."[2] Only the consenting beneficiaries and Merrill Lynch would face such a risk, however, and none of them have complained, either in the proceedings below or in this court. Indeed, before us they have vigorously opposed Borden's assertion that the estate must be joined. Particularly given the nonjurisdictional and pragmatic nature of Rule 19, see Lincoln Prop. Co. v. Roche, 547 U.S. 81, 90 (2005); Pujol, 877 F.3d at 134-35, we decline Borden's request to remand for joinder at this late date based on the potential risk of multiple obligations borne by parties who do not themselves seem concerned, see Bevan v. Columbia Broad. Sys., Inc., 293 F. Supp. 1366, 1369 (S.D.N.Y. 1968) (holding plaintiffs "lack[ed] standing" to assert joinder based on Rule 19(a)(1)(B)(ii) because "[i]f the defendants, as appears to be the case, are content to risk a possible double liability, that is their concern and it hardly lies in plaintiffs' mouths to urge such solicitous protection upon them"); cf. Provident Tradesmens Bank & Tr. Co., 390 U.S. at 110 (holding that although a "defendant may properly wish to avoid multiple litigation, or inconsistent relief," if "[a]fter trial . . . the defendant has failed to assert this interest, it is quite proper to consider it foreclosed").

---

[2] In her reply brief, Borden also asserts that the estate may attempt to relitigate estate tax liens, but that argument is waived for failure to raise it in her opening appellate brief.

We also note that, aside from a bald assertion, Borden develops no basis for contending that the estate will not be bound by the judgment in this case, given her presence as a party.[3] Though we do not here decide that question, Rule 19(a)(1)(B)(ii) is concerned with a "substantial risk" of inconsistent obligations. Fed. R. Civ. P. 19(a)(1)(B)(ii); see Wright & Miller, supra, § 1604 (explaining that the "key is whether the possibility of being subject to multiple obligations is real" and that "an unsubstantiated or speculative risk is insufficient"); Bacardi, 719 F.3d at 13 (holding no joinder necessary where "risk of inconsistency may be theoretically possible, but is not a practical concern"). We are not convinced that the risk of inconsistent obligations is "substantial" under the circumstances.[4]

Finally, to the extent Borden argues the policy of judicial efficiency underlying Rule 19 warrants remand for joinder of the estate, we cannot agree: particularly given the nearly three years of proceedings in the district court and the fact that the case has "reached the Court of Appeals," there is "no reason . . . to throw away a valid judgment." Provident Tradesmens

---

[3] Were Borden correct on this point, it would mean that the estate likely has an interest in not being joined.

[4] In describing, and rejecting, Borden's argument, we do not mean to suggest that we agree the estate can sit by without intervening and then claim not to be bound by a ruling against Borden.

- 11 -

Bank & Tr. Co., 390 U.S. at 116; see also Pujol, 877 F.3d at 134 (explaining that Rule 19, together with the other joinder rules, "aims 'to achieve judicial economies of scale by resolving related issues in a single lawsuit,' while at the same time preventing 'the single lawsuit from becoming fruitlessly complex or unending.'" (emphasis added) (quoting Smuck v. Hobson, 408 F.2d 175, 179 (D.C. Cir. 1969))).

**B.**

We consider next Borden's claim that the district court erred by applying Massachusetts law instead of New York law. Borden's argument hinges on the TOD Agreement's choice-of-law provision, which states:  "This Agreement shall be governed by, construed, administered, and enforced according to the laws of the State of New York."  Appellees urge us to disregard this provision. On this issue, irony reigns.  The party challenging the formation of a contract asks us to enforce a provision of that contract, while the parties seeking to enforce the contract disclaim the applicability of that provision.

Irony to one side, Borden simplifies matters for us by having failed to raise her choice-of-law argument in the district court.  The argument is therefore forfeited, and we need not consider it.  See Sierra Club, 555 F.3d at 26.  Even if we were to review for plain error, however, Borden could not prevail.  See Fothergill v. United States, 566 F.3d 248, 251-52 (1st Cir. 2009).

- 12 -

Under that "formidable" standard of review, Borden must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the [appellant's] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  Id. at 252 (alteration in original) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

We apply Massachusetts choice-of-law rules to determine the applicable law.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  "Massachusetts will give effect to a choice of law provision" where doing so is "fair and reasonable."  Realty Fin. Holdings, LLC v. KS Shiraz Manager, LLC, 18 N.E.3d 350, 354 (Mass. App. 2014) (citing Morris v. Watsco, Inc., 433 N.E.2d 886, 888 (Mass. 1982)).  There is an exception, however, "where the validity of the contract's formation is challenged, as with a claim of precontract misrepresentation or fraud in the inducement, in which case it is less likely that the contract's choice of law provision will be honored."  Id. at 355.[5]

---

[5]  Borden argues this exception is limited to claims of fraud, but the case law speaks broadly of claims challenging "the validity of the contract's formation."  Realty Fin. Holdings, 18 N.E.3d at 355.  And Borden's invocation of Lambert v. Kysar, 983 F.2d 1110, 1121 (1st Cir. 1993), which discusses a fraud exception to application of forum-selection clauses, not choice-of-law provisions, does not convince us that we should ignore such clear language.

- 13 -

Here, the TOD Agreement's choice-of-law provision states the agreement will be "governed by, construed, administered, and enforced" according to New York law. But Borden's challenge is to the formation of the contract, and she does not ask us to construe, administer, or enforce the agreement. See Ne. Data Sys., Inc. v. McDonnell Douglas Comput. Sys. Co., 986 F.2d 607, 611 (1st Cir. 1993) ("Because this claim concerns the validity of the formation of the contract, it cannot be categorized as one involving the rights or obligations arising under the contract. Hence, the claim falls outside the contract's choice-of-law provision." (emphasis in original)). The district court therefore committed no plain error in applying Massachusetts law to Borden's claim.

## C.

Lastly, we turn to Borden's claim that the district court improperly granted summary judgment to the consenting beneficiaries. We review orders granting summary judgment de novo. Pac. Indem. Co. v. Deming, 828 F.3d 19, 22 (1st Cir. 2016). In undertaking that review, we must "constru[e] the record in the light most favorable to the non-moving party and resolv[e] all reasonable inferences in that party's favor." Pierce v. Cotuit Fire Dist., 741 F.3d 295, 301 (1st Cir. 2014). Summary judgment is appropriate where the record reveals "no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

- 14 -

As noted above, Borden claims the TOD Agreement is voidable because Flanders lacked capacity to enter into the agreement. The consenting beneficiaries moved for summary judgment, arguing Borden failed to present any evidence regarding Flanders's capacity. The motion was supported by affidavits from each of the consenting beneficiaries and two of Flanders's attorneys.

Borden failed to file a timely opposition. Instead, she filed a motion for enlargement of time. The district court granted Borden a twenty-one-day extension but advised Borden that she "should not expect any further continuances." Borden missed the extended deadline. Over a month late, she filed an "answer" to the motion for summary judgment. A few months later, Borden filed a motion for leave to file an amended opposition to the motion for summary judgment, as well as an "emergency motion" containing "newly uncovered evidence."

Borden's three late filings contained evidence she claimed demonstrated Flanders's incapacity, consisting principally of medical records from Flanders's hospitalization from October 30 to November 16, 2015, four months before Flanders signed the TOD Agreement. According to those records, Flanders had been "more or less appropriately managing his own affairs until" mid-October 2015, when he developed "confusion and hostility/paranoid ideation" towards his caretakers, which led to a brief period of

- 15 -

hospitalization on October 19, 2015. The doctors "[s]uspect[ed]" these symptoms were "substance abuse related." Flanders had an "extensive history of substance abuse/alcohol use disorder," a toxicology screen revealed he had been taking "benzodiazepines and opiates," and he had apparently been drinking around "a bottle of wine a day." The doctors "[a]nticipate[d]" Flanders's symptoms would "substantially clear over several days," apparently because Flanders had experienced a "strikingly similar" substance-abuse-related "delirium" a year earlier, but it had cleared in a similar amount of time. The records also contained a "Notice of Determination of Patient Incapacity" dated November 5, 2015. In that document, a doctor determined that Flanders lacked "capacity to make or communicate health care decisions" pursuant to Massachusetts law. See Mass. Gen. Laws ch. 201D, § 6. The doctor described Flanders's incapacity as being caused by "neurocognitive disorder," "irreversible," of "moderate" extent, and of "long term" duration. See id. ("The determination [of patient incapacity] shall . . . contain the attending physician's opinion regarding the cause and nature of the principal's incapacity as well as its extent and probable duration."). Elsewhere, the doctor diagnosed Flanders with "[p]robable major vascular neurocognitive disorder with behavioral disturbance." Before Flanders was discharged to his home, the doctors described him as "alert," "very

insightful," and "[a]ware of his discharge plans," but also stated that he had "residual confusion" and "[p]oor judgment and insight."

The district court struck Borden's untimely opposition and denied her subsequent motions; the hospitalization records were therefore not included in the summary judgment record considered by the court. The court then granted the consenting beneficiaries' motion for summary judgment, holding that "[o]n th[e] summary judgment record, no reasonable factfinder could find that at the time of the [TOD Agreement], [Flanders] was incapable of understanding and deciding upon its terms or was unable to act in a reasonable manner in relation to the transaction."

The court explained that its decision was based on the following undisputed facts taken from the affidavits accompanying the consenting beneficiaries' motion. Flanders had expressed to his friends, his brother, and his long-time personal attorney that he did not want to leave his full estate to Borden. To that end, Flanders spent years working with one of his lawyers, Jessie McCann Brescher, to craft an estate plan that would provide for the consenting beneficiaries. He met with Brescher in February 2016 to discuss setting up a TOD account for that purpose. Flanders then "obtained a blank TOD certificate, gathered the information necessary to complete it, including obtaining the mailing addresses and social security numbers for the five people he wanted to name as beneficiaries, and provided the information to Brescher

to complete." According to Brescher's affidavit, Flanders signed the TOD certificate in her presence on March 22, 2016, after reading it, indicating he had no questions, and stating that he was signing voluntarily as his free act and deed. Brescher's affidavit states Flanders was "lucid" and "mentally alert" and that she "ha[s] no doubt that [Flanders] understood what he was doing on March 22, 2016 when he signed the TOD Certificate, what the document was designed and intended to accomplish, and to whom he was planning to leave specified portions of his stock." Finally, the court explained that "multiple individuals who were in contact with [Flanders] around the time he signed the TOD Agreement have attested to his mental soundness, and there is no medical evidence in the summary judgment record to the contrary." Although two affiants acknowledged Flanders's two-week hospitalization from October to November 2015, they stated that at all other times he "seemed in full control of his mental faculties" and only took medications prescribed by his doctor.

On appeal, Borden trains her attention on the district court's conclusion that there was no medical evidence in the summary judgment record belying Flanders's mental soundness. Borden does not argue that the court was wrong to exclude her untimely filings. Rather, she suggests that Sherry's affidavit in support of the consenting beneficiaries' motion itself referred to the medical records she sought to introduce. Therefore, according

to Borden, the record contained a genuine issue of material fact foreclosing summary judgment. The consenting beneficiaries dispute that Sherry's affidavit referred to those records. They also argue that the medical records Borden relies upon are unauthenticated and constitute inadmissible hearsay. Even assuming the medical records were properly presented to the court for consideration in connection with the summary judgment motion, however, we conclude that they fail to raise a genuine dispute of material fact as to Flanders's contractual capacity.

Under Massachusetts law, a "contract is voidable by a person who, due to mental illness or defect, lacked the capacity to contract at the time of entering into the agreement." Sparrow v. Demonico, 960 N.E.2d 296, 301 (Mass. 2012). Contractual incapacity exists where a party is either "incapable of understanding and deciding upon the terms of the contract," id. (quoting Wright v. Wright, 29 N.E. 380, 381 (Mass. 1885)), or where, "by reason of mental illness or defect, [the person] is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition," id. at 302 (alteration in original) (quoting Krasner v. Berk, 319 N.E.2d 897, 900 (Mass. 1974)). In either case, "medical evidence is necessary to establish that a person lacked the capacity to contract due to the existence of a mental condition." Id. at 304. "The inquiry as to the capacity to contract focuses on a party's

understanding or conduct only at the time of the disputed transaction," id. at 303, and the "burden is on the party seeking to void the contract to establish that the person was incapacitated at the time of the transaction," id. at 301.[6]

Borden's primary argument is that the hospitalization records are evidence of Flanders's mental incapacity; that no witness presented evidence of successful treatment or cure of his conditions; and that a reasonable jury could therefore infer that Flanders was incapacitated at the time he signed the TOD Agreement. Borden does not distinguish between the acute episode of confusion and paranoia induced by substance abuse and the neurocognitive disorder diagnosis. In either case, though, her argument fails.

The relevant inquiry is Flanders's mental state "at the time of the disputed transaction." Id. 303. Flanders's hospitalization, however, was four months prior to his execution

---

[6] Borden argues that Sherry admitted he was in a fiduciary relationship with Flanders and that the consenting beneficiaries therefore bear the burden of proof. This argument, raised for the first time in Borden's reply brief, is waived. See United States v. Tosi, 897 F.3d 12, 15 (1st Cir. 2018) ("[A]rguments available at the outset but raised for the first time in a reply brief need not be considered."). Even if we were to overlook that waiver and assume Sherry was a fiduciary of Flanders, the case cited by Borden holds only that a "fiduciary who benefits in a transaction with the person for whom he is a fiduciary bears the burden of establishing that the transaction did not violate his obligations." Cleary v. Cleary, 692 N.E.2d 955, 961 (Mass. 1998) (emphasis added). Cleary does not mention capacity, let alone shift the burden of proving capacity to the fiduciary.

of the TOD Agreements. On these facts, that chronology is fatal to any argument of incapacity based on the substance-abuse-induced episode of confusion. Perhaps a reasonable jury could infer that Flanders's confusion persisted for a short time after his discharge. But a finding that Flanders lacked capacity four months later, based solely on the acute bout of confusion -- in the face of uncontroverted evidence of his mental lucidity at all relevant times, including most importantly during the transaction at issue -- would amount to mere speculation.[7] More is needed to establish a genuine dispute of material fact, particularly since Borden bears the ultimate burden on the issue of contractual competence. See Mariasch v. Gillette Co., 521 F.3d 68, 71 (1st Cir. 2008) ("[S]ummary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." (quoting Ingram v. Brink's, Inc., 414 F.3d 222, 228-29 (1st Cir. 2005))); Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) ("On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion.").

Conversely, and favorably to Borden, we may assume that a reasonable jury could find that Flanders's "[p]robable," neurocognitive disorder persisted at the time he signed the TOD

---

[7] Nor did Borden provide any evidence to contradict the consenting beneficiaries' testimony that Flanders was apparently "following his doctors' advice and . . . taking only the medications they prescribed."

- 21 -

Agreement, given that his "patient incapacity" was described by the doctor as "irreversible" and "long term." But Borden makes no argument that the doctor's determination in November 2015 that Flanders lacked "capacity to make or communicate health care decisions" under Massachusetts law means Flanders was contractually incompetent in March 2016. Nor could she. See Mass. Gen. Laws ch. 201D, § 6 ("A determination made pursuant to this section that a principal lacks capacity to make health care decisions is solely for the purpose of empowering an agent to make health care decisions pursuant to a health care proxy." (emphasis added)); Cohen v. Bolduc, 760 N.E.2d 714, 722 n.25 (Mass. 2002) ("A person may be adjudicated legally incompetent to make some decisions but competent to make others."); Johnson v. Kindred Healthcare, Inc., 2 N.E.3d 849, 854 n.10 (Mass. 2014) ("The capacity 'to make treatment decisions' is distinct from the capacity 'to make informed decisions as to [one's] property or financial interests.'" (alteration in original) (quoting Cohen, 760 N.E.2d at 722 n.25)). Similarly, a tentative diagnosis of a moderate level of neurocognitive disorder does not itself equate with contractual incapacity. Cf. Paine v. Sullivan, 950 N.E.2d 874, 881 (Mass. App. 2011) (noting that "a diagnosis of Alzheimer's disease in and of itself does not compel a conclusion that a testator lacks capacity to execute a will").

So, the records get Borden part way, by showing some form of incapacity and the existence of a mental condition, but a gap remains between what she shows and what she would like to show (contractual incapacity). And to close that gap, Borden needs under Massachusetts law what she clearly does not have -- medical evidence linking Flanders's neurocognitive disorder to a lack of contractual capacity at the time he executed the TOD Agreement. Sparrow, 960 N.E.2d at 304-05. There is no medical evidence at all, such as expert testimony, connecting Flanders's disorder to an inability to "understand[] and decid[e] upon the terms of the contract" or "act in a reasonable manner in relation to the transaction" at the time he signed the TOD Agreement (or at any other time). Id. at 301-02 (first quoting Wright, 29 N.E. at 381; then quoting Krasner, 319 N.E.2d at 900); see also id. at 304. Nor for that matter does Borden offer circumstantial evidence of symptoms sufficient to suggest that Flanders's neurocognitive disorder in any way manifested in a loss of those abilities around the time Flanders signed the TOD Agreement. Id. at 305. Without such evidence, a jury could only speculate in attempting to determine the disorder's effect, if any, on Flanders's contractual capacity.

Finally, Borden mounts various attacks on the consenting beneficiaries' evidence regarding Flanders's capacity, none of which we find availing. First, Borden argues that Brescher's

statements regarding Flanders's capacity at the time he signed the TOD Agreement are speculative. But those statements were based on Brescher's personal observations of Flanders reading and signing the TOD Agreement and her conversations with Flanders during that meeting. Thus, there is nothing speculative about her conclusion that Flanders "understood what he was doing on March 22, 2016 when he signed the TOD Certificate, what the document was designed and intended to accomplish, and to whom he was planning to leave specified portions of his stock."

Second, Borden argues that Brescher's opinion as to Borden's competency must be disregarded because Brescher is not a medical expert. Borden misunderstands the relevant standards. Although medical evidence, as opposed to lay testimony, "is necessary to establish that a person lacked the capacity to contract due to the existence of a mental condition," Sparrow, 960 N.E.2d at 304 (emphasis added), a "non-expert is competent to testify to the physical appearance and condition and acts of a person both for their probative value for the jury and for the purpose of furnishing facts as the basis of hypothetical questions for experts," id. at 305 (quoting Cox v. United States, 103 F.2d 133, 135 (7th Cir. 1939)). A reasonable jury would be entitled to believe Brescher's unrebutted testimony regarding Flanders's condition and acts at the time he signed the TOD Agreement.

Third, Borden argues that the consenting beneficiaries' evidence only demonstrates that Flanders had "the lesser level of testamentary capacity, not the higher standard required for contractual capacity." See Maimonides Sch. v. Coles, 881 N.E.2d 778, 788 (Mass. App. 2008) (describing test for contractual capacity as "more demanding" than test for testamentary capacity); compare Palmer v. Palmer, 500 N.E.2d 1354, 1357-58 (Mass. App. 1986) ("Testamentary capacity requires ability on the part of the testator to understand and carry in mind, in a general way, the nature and situation of his property and his relations to those persons who would naturally have some claim to his remembrance"; "freedom from delusion which is the effect of disease or weakness and which might influence the disposition of his property"; and "ability at the time of execution of the alleged will to comprehend the nature of the act of making a will." (quoting Goddard v. Dupree, 76 N.E.2d 643, 645 (Mass. 1948))), with Sparrow, 960 N.E.2d at 301-02 (contractual capacity requires the ability to "understand[] and decid[e] upon the terms of the contract" and "act in a reasonable manner in relation to the transaction" (first quoting Wright, 29 N.E. at 381; then quoting Krasner, 319 N.E.2d at 900)). According to Borden, to demonstrate Flanders's capacity, the consenting beneficiaries would have to show he understood that the TOD Agreement would have tax implications for the estate.

This argument stumbles at the starting blocks:  As we have repeatedly noted, the burden is on Borden to show Flanders lacked capacity, not on the consenting beneficiaries to show he had capacity.  Sparrow, 960 N.E.2d at 301.  Moreover, even assuming Flanders was unaware of the tax implications of the TOD Agreement (an assertion for which Borden provides no evidence), lack of awareness is not lack of capacity; rather, it is a lack of knowledge that could have many causes, including (as Borden speculates) less-than-exhaustive advice on the part of Flanders's attorneys or accountants.

Finally, Borden alleges that Sherry "saw a delusional state that no other witness knew of or revealed," calling into question the credibility of the other witnesses.  This argument is based on a false premise:  Flanders's brother acknowledged in his affidavit that Flanders was "hospitalized" for "a couple of weeks in November of 2015," though he stated that "in all the times" he spoke with Flanders, he "never doubted [Flanders] was in full control of his mental faculties."  More fundamentally, Borden offers no evidence that the other witnesses were unaware of Flanders's hospitalization.  Borden guesses what a jury might conclude if Brescher were asked about her knowledge of Flanders's hospitalization and diagnosis, but Borden -- who bears the burden of proof -- never deposed Brescher (or any other witness), nor has she otherwise presented evidence as to Brescher's knowledge.  As

- 26 -

a result, we (and the jury) can only speculate on this record as to both Brescher's knowledge and the import of her knowledge as to her credibility. Such "unsupported speculation" cannot substitute for producing "specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (alteration in original) (first quoting Smith v. F.W. Morse & Co., 76 F.3d 413, 428 (1st Cir. 1996); then quoting Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994)); see Nunes v. Mass. Dep't of Corr., 766 F.3d 136, 142 (1st Cir. 2014) ("Generally speaking, a party cannot raise a genuine dispute merely 'by relying on the hope that the jury will not trust the credibility of the witness,' but must instead present 'some affirmative evidence' on the point, except perhaps where the testimony is 'inherently unbelievable.'" (quoting McGrath v. Tavares, 757 F.3d 20, 28 n.13 (1st Cir. 2014))); cf. Blanchard v. Peerless Ins. Co., 958 F.2d 483, 490 & n.10 (1st Cir. 1992) (vacating grant of summary judgment where nonmovant pointed to "undisputed evidence from which a jury might reasonably infer that [the witness's] statements as to his subjective intent were motivated by self-interest").

## II.

For the foregoing reasons, we affirm the judgment of the district court.